[No. 2024.]

## FLICK v. THE HAHN'S PEAK AND ELK RIVER CANAL AND PLACER MINING COMPANY.

1. CONTRACTS—WATER RIGHTS—CONSTRUCTION OF DITCH.

Plaintiff contracted with defendant to enlarge and complete a ditch to carry water from a certain river to defendant's placer mine and to build a dam across the river that would at all times cause a sufficient amount of the water of the river to flow into the ditch to fill the same, and guaranteed that a full head of water should flow through the ditch for its entire length for a period of thirty days after its completion, stating what was to be understood as a full head of water. Because of a scarcity of water in the stream a full head could not be turned into the ditch when ·completed. *Held* that the guarantee in the contract was not that the stream would supply the amount of water, but only that the ditch should be capable of conveying a full head of water from the river to the mine if there was sufficient water in the river to supply the amount. And that plaintiff having turned into the ditch all the water of the river and kept the same running therein for thirty days, he had sufficiently complied with that part of his contract.

2. SAME—CONSTRUCTION OF CONTRACT.

Plaintiff contracted with defendant to enlarge and complete a ditch of certain dimensions and a dam to turn the water of the river into the ditch, and guaranteed that a full head of water should flow through the entire length of the ditch for thirty days immediately after completion. After the completion of the ditch and before the commencement of an action by plaintiff to enforce the collection of the balance of the contract price for the work, defendant notified plaintiff that he had not complied with the conditions of the agreement calling his attention to the provision that a full head of water should flow through the ditch for thirty days, and advised plaintiff that the ditch had never been full of water and closed his notice with this language, " The strength and capacity of the ditch have not been tested in accordance with the terms and conditions of said contract." *Held* that the language of the notice was a construction of the contract by defendant that the guarantee in the contract was of the capacity of the ditch and not that the river should supply the water, and that the running of the water for thirty days was for the purpose of testing the capacity and strength of the ditch, and that such construction of the contract was binding on defendant.

3. CONTRACTS—CONSTRUCTION OF DITCH—ACCEPTANCE—WAIVER.

Plaintiff contracted with defendant to enlarge and complete a ditch,

and guaranteed that a full head of water should run through the ditch for thirty days after its completion. All the water in the stream was turned into and kept running through the ditch for thirty days, but the amount was insufficient to supply a full head. Defendant accepted the ditch, took possession and proceeded to use it for the purposes intended, without protest, and acknowledged liability to plaintiff for the payments specified in the contract. *Held* that defendant waived the requirement in the contract that a full head of water should be run through the ditch for thirty days.

4. CONTRACTS—EVIDENCE—PAROL AGREEMENT NOT ADMISSIBLE TO VARY WRITTEN CONTRACT.

Where the terms of a written contract are clear and express, it is conclusively presumed that all prior negotiations were merged into the written contract, and evidence of conversations and negotiations between the parties prior and leading up to the execution of the contract, tending to contradict or vary its terms is not admissible.

5. CONTRACTS—CONDITIONAL PROMISSORY NOTE—OPTION TO PAY IN SPECIFIC PROPERTY.

A contract provided that for certain work performed, after making certain cash payments, defendant was to execute to plaintiff its conditional note for the balance, to be secured by a certain number of shares of defendant's capital stock, with the condition that if the note was not paid at maturity, the stock should be received in full payment of the note. *Held* that before defendant could have or exercise the option to pay the amount in capital stock, it must have executed and delivered its note and the stock to plaintiff at the time specified in the contract. And having failed to do so, no option arose in its favor, and plaintiff was entitled to recover the amount in money.

*Appeal from the District Court of Arapahoe County.*

Mr. F. E. GREGG and Mr. GEORGE L. HODGES, for appellant.

Mr. W. E. SORELLE, for appellee.

WILSON, P. J.

Plaintiff Flick seeks by this suit to foreclose a mechanic's lien claimed on account of work and labor done by him for the repairing, enlargement and completion of certain ditches owned by the defendant company, and used by it for the

conveyance of water in the conduct of placer mining operations in which it was engaged. The principal ground of dispute arises from the construction of the contract for the work, which was in writing, and the material portions of which we quote.

" This agreement made and entered into, * * * witnesseth:

" That whereas the said party of the first part is the owner of those two (2) certain ditches in Routt county, Colorado, known as the Elk River ditch, which extends from a branch of the Elk River in a southwesterly direction for a distance of about twenty-one (21) miles to the town of Hahn's Peak, and the Willow Creek ditch, which when completed, will extend from the west or main branch of the Willow Creek in a southeasterly direction for a distance of about four (4) miles to Nugget cut, a few hundred feet above said town; and

" Whereas the said party of the first part desires the said Willow Creek ditch to be completed, and the said Elk River ditch to be repaired, improved and enlarged.

" Now therefore, * * * (Here follows a number of specifications of the work, as to the size of the ditch, flume, etc.) A good durable, strong flume, of sufficient size to carry the waters of said ditch as enlarged, shall be constructed by said Flick around Sand Rock point, about two and one half (2½) miles below the headgate of said ditch; that said flume shall be so thoroughly and strongly anchored that it will remain in its position of construction permanently. The headgate of said ditch shall be constructed of substantial material and the dam or bulkhead across the creek, just below the head of said ditch, shall be constructed of substantial and permanent materials, so that the same will, at all times, cause sufficient amount of the waters of said Elk river to flow into said ditch to fill the same. * * * All of said work shall be completed on or before the 15th day of August, A. D. 1897, and on completion thereof, water shall be turned into the same at the headgate, and the said Flick guarantees that a full head of water shall flow through the said ditch for its entire length for a period of thirty (30) days immediately

after its completion. It is expressly understood that a full head of water in said ditch shall mean a volume of water six (6) feet wide on top, three and one half (3½) on the bottom, and three (3) feet deep."

Three several cash payments were required to be made to plaintiff, the last of which was on the 1st day of October, 1897, and the contract then provided further:

" On the last aforesaid date, in addition to the aforesaid payments, said party of the first part agrees to make, execute and deliver unto said party of the second part its conditional note, payable in one (1) year after its date, in the sum of twenty-one hundred seventy-five ($2175,) dollars, secured by seventeen thousand four hundred (17,400) shares of the capital stock of said company, with the condition that if the said note shall not be paid on or before its maturity, the said stock shall be taken and received by the said party of the second part in full payment of said note.

" It is further agreed between the parties hereto that said first payment shall be limited to seventy-five (75) per cent of the value of all work done at that time, and the said second payment shall be made upon the completion of all the said work by said Flick and the acceptance of the same by George B. McFadden, it being the intention that said Flick upon the completion of said work, shall have received the total sum of five thousand ($5,000) dollars, and that no further payment shall be made to said Flick until after he shall have caused a full head of water to flow through said ditch for a period of thirty (30) consecutive days."

It is conceded that the plaintiff did not cause a full head of water as described in the contract to flow through this ditch for a period of thirty days, or for any time, after its completion, and for this reason the defendant contends that the plaintiff, having wholly failed to comply with his contract, forfeited all right to recover any further payments which had been provided for. In other words, defendant insists that the principal object of the contract was to secure the specified amount of water, and that the plaintiff bound himself to

furnish it, and failing in this, he was not entitled to recover. Plaintiff contends that the principal object of the contract was to repair, enlarge and construct the ditch, so that it would be capable of holding and conveying the specified amount of water; that the only reasonable construction of the contract with reference to this requirement upon him to turn in the water, was that it was intended thereby simply to test the capacity of the ditch after the completion of the work, to hold and carry such an amount of water, and that his guarantee was to this effect and extent only. This being true, plaintiff insists that a failure on his part to comply with this provision in the contract, would not wholly defeat his right to a recovery, but would simply entitle the defendant to set-off against, or reduce the amount of the payments to be made according to the contract, by the amount of actual damage, if any, it had suffered by reason of any imperfect or defective work. The trial court seems to have taken defendant's view of the question, and finding that plaintiff had failed and omitted to cause a full head of water to flow through the said ditch in the complaint specified for a period of thirty days consecutively, it further found that by reason of such failure, plaintiff was not entitled to recover at all. In this we are clearly of opinion that the court was in error.

In our view, the contract is clear and specific, and sustains the position taken by the plaintiff as to the object, purpose and intent of the parties. The exclusive subject-matter of the contract was the enlargement, cleaning out, repairing, etc., of the ditches according to the specifications furnished by the chief engineer of the company. In no place is anything said about any obligation on the part of the plaintiff to furnish any water at all, nor can any such obligation be implied from anything said in the contract. The contrary clearly appears. The ditch was to convey water from Elk river. At this stream the headgate was to be placed, and the only reasonable construction of the provision requiring the plaintiff to turn in a certain amount of water of Elk river at the headgate upon completion of the ditch, was to test the ditch in

order to see if the plaintiff had constructed it in such a manner as to hold and convey water therefrom. The words "turn into" in the connection used, assume that the water would be there to be turned. The contract nowhere required the plaintiff to furnish the water. Again, in the specifications as to the dam or bulkhead across the creek, it was provided that "it shall be constructed of substantial and permanent materials, so that the same will at all times cause *sufficient amount of the waters of the said Elk river to flow into the said ditch to fill the same.*" We do not think the language could be plainer. It was supposed that the water would be in Elk river, and the only obligation of plaintiff was to construct such a dam as would turn into the ditch from that stream the required amount of water. If there was any doubt as to the meaning of this provision in the contract, it would be entirely removed by the construction which the defendants themselves placed upon it. A few days previous to the commencement of this suit, the defendant company, through one of its directors and its attorney, in a letter to the plaintiff notified him that he had not complied with the conditions of the agreement, calling his attention to the provision in the contract that a full head of water should flow through the ditch for its entire length for a period of thirty days immediately after its completion, stating that Mr. McFadden, one of the directors and the chief engineer of the company, had just returned from the property, and advised him that the ditch had never been full of water since he had worked on the same. The letter then concluded, "The strength and capacity of the ditch have not been tested in accordance with the terms and conditions of said contract." This would seem to be conclusive to the effect that the defendant itself at that time considered that the turning in of the water was for the mere purpose of testing the capacity and strength of the ditch. Even if the contract had been indefinite in its terms, this construction placed upon it by the defendant would have been binding upon it. *Coal Co. v. Yoch Co.*, 57 Ill. App. 666.

Conceding even that the trial court was correct in its construction of the contract in the respect under consideration, yet its conclusion of law was none the less erroneous under the facts of the case. It is undisputed that upon the completion of the ditch, the plaintiff turned into it all of the water then being in Elk river, and kept the same running therein for a period of thirty days, but this entire body of water was sufficient only to fill the ditch to a depth of one and one-half to two feet throughout its entire length, instead of three feet as originally contemplated. It was neither charged nor shown that this failure was by reason of any negligence, want of care or skill, or attention of the plaintiff, or in fact that it was due to any act on his part either of omission or commission. Waiving entirely the question as to the extent under these facts that the nonperformance of plaintiff would be excused by reason of impossibility of performance, and under the doctrine of *vis major*, it clearly appears that the defendant with full knowledge of all the facts, waived this requirement of the contract by accepting the ditch through the person and in the manner prescribed by the contract, taking full possession of it and proceeding to use it for the purposes intended, without protest or objection; and further, by thereafter acknowledging its liability and obligation to make to plaintiff the payments specified in the contract.

Construing the contract as we do, and holding as we do that its purpose, object and intent can be clearly ascertained from its express terms, it necessarily follows that the court erred in admitting testimony on the part of the defendant as to conversations and negotiations between the parties, prior and leading up to the execution of the contract, tending to contradict or vary the terms of the contract as we construe it. The contract not being doubtful in its terms or provisions, it is conclusively presumed that all prior negotiations were merged in the written contract. *Carr v. Schafer*, 15 Colo. 48; *Dawson v. Woodhams*, 11 Colo. App. 394; *Johnson v. Cummings*, 12 Colo. App. 17.

Serious objection is also made to a finding of the court which was as follows:

" That of the amount reserved by said contract after the payment of five thousand dollars, the sum of twenty-one hundred and seventy-five dollars was payable in stock of said defendant, and not otherwise, except at the option of defendant." We think the objection was well taken. The provision of the contract with reference to the payment of this amount, was that on the 1st day of October, 1897, after making all previous payments in cash, the defendant was to make and deliver unto the plaintiff its conditional note, payable in one year after its date, for the sum of $2,175, to be secured by 17,400 shares of the capital stock of the company, with the condition that if the said note should not be paid on or before its maturity, the stock should be taken and received by the party of the second part in full payment of the note. Before the defendant could have or exercise any option to pay this amount in stock, it was necessary for it first to have on the date specified, executed and delivered to plaintiff its promissory note for the same, and have also delivered to him the stock to secure its payment. The obligation was on defendant to do these things before any option to pay in stock could exist, and not upon the plaintiff to demand it. The defendant did not comply with this obligation, and hence, no option to pay in stock arose in its favor, and the plaintiff was entitled to recover the amount in money. *Brown v. Foster*, 51 Pa. St. 165; *O'Connor v. Dingley*, 26 Cal. 1; *Ry. Co. v. Marlor*, 123 U. S. 687; *Brown v. Dobson*, 48 Atl. Rep. (Pa.) 415.

About $1,500 of the amount for which plaintiff claimed judgment, was for extra work. It was not disputed that all of this extra work was done by the plaintiff, nor that it was done by the express direction, authority and consent of two of the five directors of the defendant company, one of whom was named in the contract as the engineer who was to supervise all the work, who prepared all plans and specifications for it, and who was to accept the same when completed, When all of this extra work was completed, these two direct-

ors gave to the plaintiff a certificate in writing to the effect that he had done such work, that it was of certain specified value, and upon the certificate, one of the parties, who was secretary and treasurer of the company, actually made the plaintiff a partial payment. The defendant resists this part of the claim upon the ground that these directors had no power or authority to contract for the company, nor to change in any respect the work as specified in the written contract between the company and the plaintiff; and also that some at least of the alleged extra work was embraced in and required to have been done by the written contract. The amount of plaintiff's claim or charge for some of this work is also contested. The plaintiff contends that the directors authorizing the extra work had full power to bind the company in the first instance, but even if not, their acts were ratified and the corporation became bound. The trial court did not pass upon these questions, simply holding as we have seen that the plaintiff was not entitled to recover anything, either for work under the contract or for extras, because he had failed to turn into and cause to flow through the Elk river ditch upon its completion the full head of water specified in the contract. This we have held to be reversible error, and as the case must be remanded for a new trial, we do not think it proper under the state of the record before us to express any opinion as to these disputed questions. We shall leave them to be first investigated and directly passed upon by the trial court at the new hearing.

The judgment will be reversed.

*Reversed.*