THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK *et al.* v. THE STATE OF KANSAS, *ex rel. the Attorney-general, etc.*

No. 13,070.   (72 Pac. 284.)

SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS—*Speculation—Numerical Index.* The act forbidding speculation in office (Gen. Stat. 1901, § 2364) forbids a contract for the purchase by a county from a register of deeds of a set of abstract books the entries in which constitute them in effect a numerical index, notwithstanding the provisions of section 1736, General Statutes of 1901, authorizing the commissioners to order the register to furnish a numerical index.

2. ———— *Entire Contract Invalid.* Where an unlawful contract for the furnishing of material, for a fixed sum, is united with a contract otherwise valid, for the performing of certain services, upon a stated basis of compensation, and such basis is fixed with reference to the unlawful portion of the contract, and is made more favorable to the contractor by reason thereof, the entire contract is invalid.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed April 11, 1903. Affirmed.

*Thomas B. Wall,* and *James V. Daugherty,* for plaintiff in error James M. Kerr.

*C. C. Coleman,* attorney-general, and *Stanley, Vermillion & Evans,* for The State.

The opinion of the court was delivered by

MASON, J.:  In January, 1901, the board of county commissioners of Sedgwick county entered into a written contract with J. M. Kerr, the register of deeds, as follows :

"ARTICLE OF AGREEMENT, Made and entered into this 4th day of Jan. 1901, by and between J. M. Kerr, party of the first part, and the county of Sedgwick, party of the second part,

"WITNESSETH : That the party of the first part, in consideration of the covenants hereafter set out, agrees to sell and deliver to said county of Sedgwick a numerical index of records of the register of deeds' office of Sedgwick county, Kansas, from and including the first volume of records to the 1st day of January, 1888, for the sum of $3200, and to continue said index from January 1, 1888, to this date, Jan. 4, 1901, on blank books furnished by the county, for the sum of $3½ cts. for each tract of land or lot as contemplated by law ; hereby agreeing to complete the same from said Jan. 1, 1888, to this date, Jan. 4, 1901, and the party of the first part shall be paid on the first Monday of each month for all work done on said indexes to date ; the party of the second part hereby agreeing to pay said sum above set forth at the time above stated, and to pay said sum of $3200 upon the delivery of said indexes up to Jan. 1, 1888, and said books put into condition as shown to be done by journal entry of the commissioners of this date.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals, this 4th day of Jan. 1901.

BOARD COUNTY COMMISSIONERS,
Sedgwick County, Ks.
By J. E. HOWARD, *Chairman.*
J. M. KERR."

Under this contract the register of deeds caused to be delivered to the county a set of abstract books that had been owned by one H. D. Heiserman, the county

paying therefor $3200. These abstract books purported to contain entries relating to all instruments affecting real estate in the county filed prior to January 1, 1888, excepting that some of them were brought down only to the preceding April. We shall assume that the entries in the books were correctly made and included all that would properly be contained in a numerical index, and that the fact that they may have contained entries relating to matters not required to be shown by a numerical index does not affect the case. The register proceeded to continue the entries from January 1, 1888, not doing the work personally, but having it done by clerks hired by him. He presented to the county claims for such work, under his contract, as follows: For April, $63.50; for May, $338.80; for June, $598.60; for July, $1572.90; for August, $1529.64. For this work for June the register had paid not over $100; for July, not over $210; for August, not over $210. All of these claims were allowed by the commissioners and warrants were issued upon them, and all of the warrants, except that for the work done in August, were paid.

At this stage of the proceedings an action was brought in the name of the state, on the relation of the attorney-general, to enjoin any further payments under the contract, upon the ground that it was void because prohibited by statute, and also because of actual fraud in its conception. The district court, upon a very full hearing, granted a temporary injunction. The board of commissioners and the register of deeds join in this proceeding in error, brought to reverse such order. However, the register is practically the sole plaintiff in error, the board as now constituted having in this court expressed a wish to disavow the contract, if the law will permit such course.

It is first contended that such an action cannot be maintained by the state upon the relation of the attorney-general.   It is obvious that under the doctrine of *Craft v. Jackson Co.*, 5 Kan. 518, which has not been modified by any subsequent decision of this court, no individual could maintain the action, since no one is affected by the wrong complained of in a different manner from the other members of the community. It is well settled that in such a case the action may be brought by the state.   (*The State, ex rel., v. Comm'rs of Marion Co.*, 21 Kan. 419 ; *The State v. Kansas City*, 60 id. 518, 57 Pac. 118.)

The principal contention made is whether the contract was one prohibited by statute.   Section 364 of the crimes act (Gen. Stat. 1901, § 2364) reads as follows :

"That all officers, state and county, and all officers appointed or elected for the purpose of overseeing and directing any of the public improvements of the state, and all officers holding and exercising any office of trust or profit under and by virtue of any law of the state, be and they are hereby prohibited from taking any contract, or performing or doing or having performed or done for their own profit, any work in and about the office holden by them, or in or about any work over which they have in whole or in part the supervision, direction or control, and from furnishing any materials used in any such work, and from furnishing for the use of any institution, public work, county, township or other interest, the protection of which interest is a part of the duties of his office, any fire-wood, clothing, materials for building, or other thing required by such institution, public work, county, township or other interest so in the keeping, in whole or in part, of such person."

This statute explicitly prohibits a register of deeds from taking any contract in and about his office, and

from doing or having done for his own profit any
work in and about his office, and from furnishing any
material used in any such work. The contract in
question was a contract in and about the office of the
register of deeds ; it provided for the register's doing,
or having done, for his profit, work in that office, and
for his furnishing materials used in such work. A
distinction may well be made, however, between the
doing of the kind of work here contracted for and
other kinds of work that might be required about the
register's office. This work is of a character that
should properly be done by the register of deeds as an
official, and that possibly could not be properly done
except under his supervision. The work when com-
pleted becomes a public record, to a certain extent, at
least, importing verity, and being competent evidence
in court. While it is within the letter of the law,
such work is not within the spirit of the prohibition.
But this distinction does not affect the matter of the
furnishing of such material as a set of blank books or
a set of books already compiled by private individuals,
and, so far as relates to this feature, the contract was
within the prohibition of the statute both as to its
letter and spirit.

But it is claimed by plaintiff in error that this
statute is repealed by implication by sections 95 and
98 of article 7, chapter 25, General Statutes of 1868
(Gen. Stat. 1901, §§ 1736, 1739). Those sections
read as follows :

"§ 1736. Whenever the county commissioners of any
county shall deem it necessary, they may order the
register of deeds to furnish for the use of said county,
in addition to books above specified, a numerical in-
dex, containing as many pages as are equal to twice
the number of sections within the limits of such
county; each page shall be divided into two subdi-

visions, upon each of which shall be recorded the transfer of the particular quarter-section, designated at the head of the same, commencing on the first page, with the northeast quarter at the top, the southeast quarter at the head of the lower division, and on the opposite page the north and southwest quarters of the section of the lowest number in each township in said county, and passing through the book to the section with the highest number in said county.   Such index shall be divided into columns, with the heads to each division of the pages, designating the respective columns, as follows :

| Name of instrument. | Name of grantor. | Name of grantee. | Description of property. | Volume. | Page. |
| --- | --- | --- | --- | --- | --- |

"§ 1739.   The register of deeds shall receive from the county, for indexing records already made, such compensation as the county commissioners may deem sufficient; and for indexing every tract or lot of land thereafter, in such numerical index, the sum of ten cents each, to be paid by the person having the instrument recorded."

But an examination of the history of the two statutes discloses that the statute relating to the numerical index is an earlier enactment than the other.   It is chapter 31 of the Laws of 1866, while the act forbidding officers from speculating in their offices is chapter 132 of the Laws of 1867.   So that, if the principle of repeal by implication by later enactment be invoked at all, it must be deemed that the statute authorizing the register of deeds to furnish a numerical index is repealed by the later statute forbidding him to furnish any material for his office.   As this aspect of the question has not been argued, we shall assume that the statutes are to be construed together. Under this assumption the purchase of the books referred to in the contract was illegal unless authorized by the statute providing for a numerical index.   This

statute merely authorizes the register to furnish blank books, properly ruled, in which appropriate entries are to be thereafter made. The words "numerical index," as used in the statute quoted, are obviously intended to designate such blank books. This is clearly shown by the context, and especially by the fact that the statute provides for entering in these books notations concerning instruments on record at the time they are furnished, as well as concerning those thereafter filed. On the other hand, the contract in question seeks to permit the register to sell to the county a ready-made numerical index, the principal value of which, in fact, practically its whole value, results from the entries already made in it. The legislature may well be deemed to have considered it safe to relax the general rule far enough to permit the register to furnish blank books, they being staple articles, the price of which could not have a wide range of variation, without relaxing it so far as to allow him to sell to the county what is, in effect, a set of abstract books, the value of which is necessarily speculative, they having no fixed market price, and being subject to no definite test of value. We conclude that the purchase of the books in question was not authorized by the statute referred to.

It is further contended that under the facts of this case the transaction did not amount to a sale of the books to the county by the register, but was a purchase of the books from the original owner by the county, the register merely acting as its agent for the purpose. In support of this it is urged that the evidence shows that there was no margin of profit for the register—that he paid as much for the books as he received. But the effect of a statute designed to prevent speculation in office cannot be avoided, in a

case where it otherwise applies, by showing that there was no fraud in fact. The very purpose of such statutes is to spare weak human nature the strain of temptation and to discourage actual fraud by relieving the public from the task, always difficult and often impossible, of proving it. Moreover, the evidence on this point is not convincing; the contract itself is against the theory of the plaintiff in error, and the trial court, upon oral evidence, found against it.

It remains to consider whether the illegality of that part of the contract relating to the purchase of the books, which has been fully carried out, vitiates the remaining portion providing for the payment for subsequent entries at the rate of three and one-half cents for each tract of land noted. Upon its face the contract is divisible. It provides for the furnishing of a set of books at a stated price, and for the making of certain later entries at an agreed rate. But the evidence of the plaintiff in error shows that the books as received from Heiserman were not completed to January 1, 1888, as the contract required, and that he brought them down to that date, as he had intended doing, at his own expense, since he paid Heiserman the full amount he received from the county, and that he made this apparently improvident arrangement because he expected to get his compensation for this from the work that followed. In other words, from the standpoint of plaintiff in error, the rate for the making of the entries subsequently to January 1, 1888, was fixed at an amount sufficient to afford compensation not only for the work done under that part of the contract, but for what additional work was necessary to be done under the other part of the contract as well —that part under which it was in terms provided that he should receive the sum of $3200. Upon the theory

41—66 KAN.

of plaintiff in error, therefore, the rate referred to was presumably increased on account of the terms of the first part of the contract; at all events, it was established with reference to it. This consideration links together the two parts of the contract, and the illegality of either part prevents the enforcement of the other. (*Flersheim v. Cary*, 39 Kan. 178, 17 Pac. 825; 2 Kent, 468.)

So far we have discussed the matter upon the assumption that there was no actual fraud in the transaction, but the petition alleged fraud; there was evidence tending to sustain the allegation, and the trial court did not find against it. These considerations would require the affirmance of the order granting the temporary injunction, regardless of the statute.

The order of the district court is affirmed.

All the Justices concurring.