## PACIFIC BRIDGE Co. *v.* CLACKAMAS COUNTY.

*(Circuit Court, D. Oregon.* February 16, 1891.)

1. CONTRACT WITH A COUNTY.
   A county can only contract with or by the authority of its court, and the same can only be shown or proved by an entry in the record of county business; but where a county court agreed with a contractor for certain modifications in the plan of a bridge then in course of construction, and that the latter should be compensated therefor, and the provision concerning such compensation was omitted from the entry in the record, the extra work and material involved in the modification being done and furnished by the contractor and accepted by the county, the latter is liable to the former for the reasonable value thereof, the same as a natural person.

2. BUILDING COUNTY BRIDGES.
   Section 4140 of the Compilation of 1887 authorizes the county court, in its discretion, to construct and repair bridges within the county; and the only restraint on the exercise of this authority or discretion is found in section 4141 of said Compilation, which provides that a contract to construct a bridge must be let to the lowest bidder.

3. REPAIRS AND ALTERATIONS OF COUNTY BRIDGES.
   Contracts for repairs of county bridges, when such repairs do not amount to a substantial reconstruction of the bridge, may be let by the county court privately; and modifications in the plan of a bridge, in the course of construction, involving labor and material in excess of that provided for in the original contract, may be let in like manner, so long as the same is done in good faith, and not with the intention to supersede the original contract to construct the bridge, with another one, not publicly let, or one that shall have that effect.

At Law.

*Mr. Rufus Mallory,* for plaintiff.

*Mr. Julius C. Moreland,* for defendant.

DEADY, J. This action is brought by the Pacific Bridge Company, a corporation formed under the laws of California, against the county of Clackamas, a municipal corporation of the state of Oregon.

The complaint contains two causes of action.

In the statement of the first cause of action it is substantially alleged that on April 14, 1888, the plaintiff contracted with the defendant to build a suspension bridge across the Wallamet river, at Oregon City, in said county, in accordance with the specifications annexed to the contract. That after said contract was made, but before the piers of the bridge were constructed, the defendant applied to have a change made in the piers under the tower of the west end of the bridge, to which the plaintiff consented, in consideration that the defendant would pay the additional expense incurred thereby, to which the latter agreed; and thereupon the county court of said county directed an order to be entered in its records to the effect that said change be made at the expense of the defendant. That on July 2, 1888, in pursuance of this direction, an order was entered as follows: "Piers under corners of towers on east side to be three feet square on top, as shown in the working plan exhibited by contractor, and to have a batter of one in 12 on outside, as therein shown, but of one in three on the inside, making the bases about seven feet square; connecting walls to be two feet thick all around,"— but that part of the order providing for the payment of the plaintiff for the extra work and materials required to effect such change was not en-

tered. That, believing said order had been fully entered, as agreed upon, the plaintiff, in the construction of said bridge, did build the said piers and connecting walls as specified in said order. That in so doing the plaintiff built, in excess of what was required by the original plans, 165.41 cubic yards of masonry, of the value of $20 per cubic yard; in all, the sum of $3,338.20, which sum is due the plaintiff from the defendant.

The complaint is written in paragraphs numbered from 1 to 7, both inclusive, through both statements of the causes of action; but each cause of action is separately stated.

The defendant demurs to the "fifth paragraph" of the complaint, for that the same "does not constitute a cause of action against defendant."

The term "paragraph," applied to a pleading, is unknown to the law. Certain causes of action may be joined in one complaint, but each must be stated separately; and a defendant may demur to all or either of them, but not to a "paragraph," or part of one. Notwithstanding a "paragraph" or part of a pleading does not contain a statement of a good cause of action or defense, the whole of it may.

This clause or "paragraph" occurs in the statement of the first cause of action; and it contains most of the material facts thereof.

The demurrer has been argued as if taken to the whole cause of action, and it may be so considered, with leave to amend.

The grounds of the demurrer as developed on the argument are: (1) The liability of the county must be ascertained from the record, and it does not appear therefrom that any promise of compensation for the extra work and materials was made; and (2) the county court was not authorized by law to let a contract for such work or materials, except to the lowest bidder, as provided in section 4141 of the Compilation of 1887.

The proceedings of the county court in the transaction of county business, such as the construction of a bridge, must be entered in a book kept for that purpose. Section 903, Comp. 1887. The court, in this, as all other cases, speaks by its record, and not otherwise.

Assuming, however, for the present, that the county court had the authority to contract for or authorize the furnishing of the extra work and materials for the bridge, as appears to have been done, the plaintiff has furnished the same at the request of the county, and the latter has accepted them, without any agreement as to compensation. Under such circumstances, the law is well settled that a natural person would be liable to the plaintiff for the reasonable value of the work and material furnished.

Why should not a corporation, whether municipal or private, be subject to the same liability? Because the constituents of this corporation are the people of a county—a multitude, rather than an individual—is no reason why it should be exempt from an obligation arising out of its own deliberate act, and founded in right and justice.

It is admitted that the law has wisely provided that the acts and doings of a county can only be shown by the records of the county court,

—that it must speak by the record. But when, and so far as it has so spoken, there is no reason in justice or public policy, why it should not be liable thereon in the same manner and to the same extent as the humblest individual.

The authority of the county court to provide for or authorize this extra work and material depends on the proper construction of sections 4140 and 4141 of the Compilation of 1887.

Section 4140 (the same being section 2 of the act of 1862) authorizes the county court, in its "discretion," to apply any unappropriated money in the county treasury to defray "the expense of building or repairing bridges" on any county or state road within the county. Section 3 of this act provides, in effect, as was held in *Milling Co.* v. *Lane Co.*, 5 Or. 265, that no such bridge could be built or repaired except in the case of an emergency therein provided for, unless the contract therefor was let on public notice to the "lowest responsible bidder at public outcry." This section was repealed and re-enacted by the act of February 25, 1885, which now constitutes section 4141, aforesaid.

This section, by its terms, only includes the building of bridges. It is silent as to repairs and alterations. The contract is to be let to the lowest bidder, sealed bids being substituted for bids at "public outcry."

The section is a good illustration of the necessity of having a competent board of revisors, through whose hands all bills should pass before becoming laws, so that the ideas and purposes of the law-makers might be expressed in apt, plain language, and kept in harmony with the provisions and nomenclature of the constitution and existing statutes.

The "county court" is not mentioned in the section, and the authority to let a contract to build a bridge in the manner therein provided is vested in a tribunal unknown to law, namely, "the board of county commissioners." There is no such tribunal known to the constitution or laws of this state, and the legislature might as well have given this authority to the "board of missions."

If the legislature shall so provide, two commissioners may be elected in any county to sit with the county judge in the transaction of county business. Const. art. 7, § 12. But the tribunal is still the "county court," and not a "board of county commissioners."

Strictly speaking, this section, as amended, is null and inoperative, for the reason there is no tribunal known to the law empowered to execute or enforce it. The phrase "board of county commissioners" is, in legal effect, a blank.

This being so, the power to build and repair bridges at its "discretion," as provided by section 4140, is left in the county court, to be exercised without limitation or condition as to the manner of contracting therefor. Therefore the court had the authority not only to provide for this extra work and materials by private contract, but might have provided for the construction of the bridge in the same way.

But, assuming that section 4141 does apply to the county court in the exercise of its power to build bridges as provided in section 4140, still it does not follow that such court might not have provided for this

extra work and material by private contract. No question is made but that the contract to build the bridge was duly let to the "lowest responsible bidder," as provided in section 4141. But this section does not include contracts for repairs on bridges, or anything but the construction of them. Therefore the county court may provide for repairing a bridge by private contract.

Counsel for the demurrer cites the case of *Milling Co.* v. *Lane Co.*, *supra*, as deciding that a contract for repairs or extension of a bridge can only be let to the lowest bidder at public outcry. That case was decided in 1874, and arose under section 3 of the act of 1862, before it was amended by the act of 1885. It was the case of a bridge built under the supervision of a superintendent appointed by the county court. He bought lumber of the plaintiff for an apron to the bridge, by private contract, and without the authority of the court. The supreme court held that the county was not liable for the price of the lumber, although it had thus become a part of the public highway, and was used by the public as such.

This is all there was decided in the case. The additional *dictum* of the learned judge who delivered the opinion of the court, to the effect that the county court itself could not purchase the lumber for an apron to a constructed bridge without letting the contract at public outcry, is as superfluous, as his uncandid criticism in the same opinion of the authors of the Compilation of 1874, for presuming to state in an explanatory note the difficulty of determining whether a certain act was then "in force," and therefore entitled to be put in such Compilation.

However, this is not a case of repairs to a constructed bridge, but of changes and modifications found necessary in the course of constructing one. If the repairs may be provided for by private contract, so may the modifications deemed or found necessary in the course of construction.

The statute is silent as to all contracts but that of construction. In my judgment, so long as the repairs or changes do not amount substantially to a reconstruction or building, the court may, in its "discretion," provide for them by private contract.

As every one knows, it is often found necessary in the progress of such work, as it was in this case, to make changes in some part of the structure, or in the quantity or character of the material to be used therein. If it is necessary to let the contract for these changes or material to the lowest bidder, the confusion and inconvenience that would follow may be easily imagined.

By the supplemental contract the connecting walls between the piers were to be "two feet thick all around." The piers are to have a "batter" or inclination backward "of one foot in three on the inside, making the bases about 7 feet square." Suppose, as we may, that by the original contract these walls were to be only one foot thick, and the bases of the piers only five feet square, and the contract for this additional work is let to another contractor, as it might be, what would follow? A conflict of contractors, and a divided responsibility. Each of these connecting walls, instead of being a single, solid wall two feet thick, might

consist of two one-foot walls, each built by a different contractor, and, it may be, at different times, touching one another only, but not constructed or bound together as one.     Again, would the addition to the inside of the pier be built in as the pier is constructed, or built up on the outside afterwards?     Unless the contractors came to an agreement, the latter course would have to be pursued, to the probable injury of the structure.

From those imperfect suggestions it is easily seen that it is utterly impracticable to let the contract for such work or material as may be found necessary or desirable in the progress of construction to the lowest bidder.     The statute does not require it, but leaves the matter to the "discretion" of the county court, where it properly belongs.

In conclusion, the county court of Clackamas county was authorized to contract with the plaintiff for this extra work and material, and has duly done so, as appears by the entry in its record of county business.

But, no price having been agreed on for the same, so far appears from said record, the plaintiff is entitled to have, and the defendant is bound to pay, the reasonable value thereof.

The demurrer is overruled, and it is so ordered.