Bissell, J.,
delivered the opinion of the court.
Prior to the first of January, 1896, the hoard of county commissioners of Sedgwick county, proceeding under the statute, advertised for bids for the publication of the delinquent tax list. The various papers in the county put in bids. McNew, publisher of the Julesburg Grit bid one thousandth of one cent per inch for each insertion of every publication named in the contract. This was the lowest bid. The board then contracted with McNew to print the list for the year *395 1895. The contract included the lists o£ nominations, notices of redemption of county warrants, reports of county officers, and all other notices which the law required the county or its officers to publish for the year 1896. It was further agreed between the parties that McNew should publish the list in a second weekly newspaper of a different political party as required by law and receive compensation at the legal rates. McNew gave a bond in the sum of $500 to faithfully perform the contract. On the 9th of April the board came together and agreed to annul this contract and make a new one to cover not only the services which were to be performed according to the terms of the original contract but for such other printing as might be required by Sedgwick county. Prior to the meeting, the parties had a good deal of conversation about it apart from the room used for the public sessions. McNew and the commissioners seemingly apprehended the establishment of a daily paper which under the law might have a legal claim to the publication of some of the notices. Whether legitimately or otherwise the parties concluded to abrogate the original agreement and enter into a new contract covering the entire printing of the county for the year 1896. Thereupon when the board came together in session the original contract was rescinded and the parties made a new contract. This agreement substantially provided that McNew should publish in the Julesburg Grit for the year 1896, ending January 1,1897, the delinquent tax list for 1895, lists of nominations, notices of redemption of county warrants, reports of county officers, and all other notices for the year for $600 payable quarterly. It was agreed that McNew should enter into a bond, but this he does not seem to have done. A warrant was issued to him for the first quarter for $150 and this suit was begun by a taxpayer on behalf of himself and all other citizens of the county against the board to restrain them from carrying out the contract. The case was tried and both the commissioners and McNew testified to the point that the contract was made in good faith and to protect the county against anticipated daily papers which were liable *396 to be started. Evidence was also offered that McNew agreed in case a daily of opposite political faith should be started in which the list of nominations must of necessity be published, he would publish another daily of the same faith and protect the county from the great expense of printing the list in the opposition daily, and that the publication should comply with the law and the agreed compensation should cover the expenses. This however was not the contract at all. This provision was not expressed in the writing though it was said to have been discussed in the conversation prior to the rescission of the first contract and the execution of the new one. It was testified that MdSTew agreed to give a bond for the performance of this part of his agreement. This testimony was objected to but it was admitted and the parties saved their proper exception.
Manifestly this testimony was not legitimate and should neither have been received nor considered, nor on it should any judgment have been rendered for the defendants. The agreement was in writing; whatever may have been their antecedent negotiations or their talk, or their agreement, it was all merged in the written instrument which was the only evidence of the contract. If McNew had been sued for a breach of it, it would have been a perfect answer that notwithstanding this conversation the parties had made a contract and that no such provision was inserted. Whether this is such a substantial error as to require reversal we need not determine. The contract itself is wholly illegal and void and a judgment of permanent injunction preventing its execution should have been entered.
Under the act passed at the special session of 1894, Session Laws, 1894, page 45, chap. 4, section 1, it was made the duty of the county commissioners to advertise for bids to publish the delinquent tax lists. By this act they were directed to let the contract to the lowest responsible bidder. The outside limit of the fee was fixed, and the basis of measurement prescribed. The act is mandatory and boards of county commissioners are without authority to publish the *397 tax list except in accordance with the terms of this act, unless possibly, it might be under some circumstances which were not present in this case. Whether there would be any exception we need not determine. Manifestly there was none in this, for the act was in force, there was no restriction on the power of the board to act under any circumstances or conditions then existing. This the board recognized by advertising and letting the contract in accordance with the statute. When the contract was made, the board had neither right nor authority to rescind it, except for some reasons other than any which appear on the face of this record, and it was their duty as public officers to let the contract stand and enforce it against the one who had made it. We do not determine whether there might be circumstances under which such a contract could be annulled, but none were shown by the proof. If the contract was rescinded, the board was without the power to let a new contract to publish the delinquent tax list without again advertising for bids. The power was gone. It had been exercised. Having been exercised and the day having passed it would be very clear that no other bids would be put in because nobody would be advised of the fact that another contract was to be made and another letting had. The whole force and effect of the statute was annulled because there could be no competition where there was no knowledge and no notice. This question has been similarly determined under like statutes. Board of County Commissioners of Benton County v. Templeton, 51 Ind. 266.
We do not criticise the action of the board, nor do we attempt to ascertain what motive may have prompted them or what circumstances may have convinced them that this procedure was for the best interests of the county. We do not regard the question of good faith or honest purpose as a controlling element, or one which should be considered in determining the cause. It is simply a question of power. The board had no authority to make the last contract. It was not within their statutory authority and its execution should have been restrained by the judgment. We do not know of *398 how much avail this reversal may he, for we presume since the injunction was denied and final judgment entered the contract has been performed and the money paid; the taxpayer may be remediless and it may be only a question of costs as between him and the other parties. We are without the right to speculate on this matter and since the question is regularly and properly presented to us, we are compelled to decide the case even though our judgment may be fruitless.
For the reasons assigned, the judgment will be reversed.
Reversed.