## A. W. STONE V. E. F. REYNOLDS.

(Filed July 30, 1898.)

1. COUNTY COMMISSIONERS—*Term of Office.* The county commissioner elected at the general election in 1894 for the third commissioner's district of Woods county is entitled to hold said office for the term of four years from the first Tuesday in January, 1895.

2. ELECTIONS—*Commissioner District.* The statutes prescribing that at the general election in November, 1896, the voters of the First district shall elect a commissioner for four years, and the voters in the Second district shall elect a commissioner for two years, excludes the right of the voters in the Third district to elect a commissioner when there is a member for that district acting who was elected at the general election in 1894.

3. SAME—*Right Conferred by Legislature.* The right to hold elections and elect officers for the county is one conferred by the legislature, and, unless such right is conferred, no authority exists to hold such election.

4. SAME—*Woods County.* A person elected to the office of county commissioner in the third district of Woods county, at the November election, 1896, has no right to exercise the functions of such office as against a person elected at the November election, 1894, and who is qualified and attempting to perform the duties of the office.
(Syllabus by the Court.)

*Appeal from the District Court of Woods County; before Jno. L. McAtee, District Judge.*

*F. M. Cowgill,* for appellant.

*Jesse J. Dunn* and *A. C. Towne,* for appellee.

*Quo warranto* by A. W. Stone against E. F. Reynolds. There was a judgment for defendant, and plaintiff appeals. Reversed.

Opinion of the court by

BURFORD, C. J.: The Cherokee Outlet was opened to settlement and county organizations adopted September

16, 1893. The several county officers were appointed by the governor to serve until their successors should be elected, at the next regular election in November, 1894. At the general election in 1894 three commissioners were elected by the voters of Woods county, and assumed the duties of their office on the first Tuesday in January, 1895. The action in this cause is a proceeding in *quo warranto* by A. W. Stone against E. F. Reynolds to determine the right to the office of county commissioner of the Third district in Woods county. The petitioner, Stone, alleges that on the 6th day of November, 1894, he was duly elected to the office of county commissioner for Woods county for the term of four years from the first Tuesday in January, 1895, and on the 10th day of January, 1895, he duly qualified as such officer by taking the oath and giving the bond required by law, which bond was duly approved by the probate judge of Woods county, and on the 11th day of January, 1895, entered upon the discharge of the duties of county commissioner of Woods county; that at the election at which he was elected, which was the first election held in said county, three county commissioners were elected by the voters of the whole county, viz. John W. Lappin, J. J. Bishop, and A. W. Stone; that Lappin received the highest number of votes cast for county commissioner at said election; that at the first meeting of said board elected as aforesaid, on the 15th day of January, 1895, the board divided said county into three districts, as required by law, and that the district in which Lappin lived was numbered 1, that the district in which Bishop lived was numbered 2, and that the district in which Stone lived was numbered 3. The petitioner further avers that he has lived and resided in

said district No. 3, as then formed and bounded, contin-
uously, since long prior to said election, to the time of
bringing this action, and is and has been a resident,
voter, and taxpayer in said district and county since the
first assessment in said county; that he was at the time
of said election, and ever since, a qualified elector and
resident in Woods county, and was not, at the time of
his election, holding, nor since that time has he held, any
state, county, township, or city office, nor was he an em-
ployee, officer, or stockholder of or in any railroad com-
pany. He further alleges that there was no vacancy
in the office for the Third district at any time since his
election and qualification, and that he has continued to
act in, and discharge the duties of said office up until the
time he was wrongfully and forcible ousted by the de-
fendant; that he is, and has been at all times, entitled
to the peaceable and quiet possession of said office, and
entitled to the emoluments thereof; that ever since his
election to, and qualification for, said office, he re-
mained in the peaceable and quiet possession of the same,
and acted as said county commissioner within and for
commissioner's district numbered 3, until the 5th day
of January, 1897, when the defendant, Reynolds, wrong-
fully, forcibly, and unlawfully intruded himself into and
usurped said office, and ousted the plaintiff therefrom,
and has ever since and now wrongfully and unlawfully
holds and occupies said office, and receives the fees,
emoluments, and salary thereof. He then alleges that,
by reason of said wrongful and unlawful usurpation and
ouster, he has been compelled to employ counsel to bring
an action for him to recover said office, and has been
put to great trouble and expense in preparing and prose-
cuting this suit, and has lost the fees, salary, and emolu-

ments of said office, and he prays judgment for posses-
sion of the office, and for the fees and emoluments there-
of received by the defendant, and for damages, etc.

To this petition the defendant, Reynolds, filed a general
denial, followed by a number of admissions and specific
denials, none of which changed the issues made by the
petition and general denial.  As a further defense, Rey-
nolds alleged that at the general election, on November
3, 1896, he was duly elected to the office of county com-
missioner for the third district of Woods county by the
voters of said district; that, at and prior to said election,
he was a qualified elector in said district; and sets out
the facts showing his eligibility and qualifications to
hold said office.    After alleging a number of immaterial
matters    regarding    political  conventions,    nomina-
tions, etc., the defendant avers that he was regularly
nominated, his name placed upon the ticket, voted for,
and elected to the office of county commissioner for the
Third district of Woods county, at the regular election
in November, 1896, and that the plaintiff participated in
said election, assisted in the canvass of said votes, and
was a member of the board which directed a certificate
of election to issue to the defendant; that after said elec-
tion he took the oath of office required by law, and filed
the bond required, which was duly approved by the pro-
bate judge of Woods county; that, pursuant to said elec-
tion and qualification, he entered upon the discharge of
his duties as commissioner of the third district of Woods
county, on the 5th day of January, 1897, and has con-
tinued to fill said office and discharge the duties thereof.
He further alleged that the plaintiff was estopped from
questioning his title, by reason of having had knowl-
edge of all the matters alleged in his defense without ob-

jection thereto; that he had, as a member of the board, audited and allowed election expenses, and permitted the defendant to run for said office, and be elected, without objection; and further alleged that he had been damaged, harassed, and annoyed, and asked judgment for damages against plaintiff. The defendant further alleged that, during the period when the plaintiff acted as commissioner, the board changed the numbers of the districts from the numbers first given them, by numbering district 1, No. 3, and district 3, No. 1, and that prior to the election this order was rescinded, and the original numbers reinstated.

To this answer a reply was filed, denying the matters alleged in defense. These pleadings formed the issues, and the cause went to trial to a jury. The plaintiff introduced his evidence, after which the defendant demurred to the evidence. The court sustained the demurrer, and rendered judgment for the defendant, dismissing the petition, and for costs. From this judgment Stone appeals.

As we view the question here presented, but one proposition arises for consideration, viz.: Did the term of office for which Stone was elected expire in January, 1897? If it did, the defendant was legally elected and is entitled to the office. If it did not, then there was no vacancy to be filled by an election, and no action of the voters, or of the officials in canvassing votes and issuing certificate, could be of any legal force or effect.

Nor could the plaintiff be estopped from raising this question. While it is true that mere irregularities in an election may be waived, and a candidate for election may, by his act and conduct, estop himself from claiming adversely to another, such acts will not work an

—26

estoppel where there is no authority to hold the election and no vacancy in an office to be filled. The petition alleges sufficient facts to present the question as to whether the plaintiff was elected for two or four years at the election of 1894, and the facts proven clearly establish his right to the office, if the term for which he was elected, in 1894, did not expire until January, 1899.

The act of the board of which he was a member, in attempting to change the number of the district in which he lived, after the board had once established the boundaries of the districts and numbered them, is wholly immaterial to a correct decision in this case. They had no authority to make such changes, and they, after attempting it, discovered that their act was nugatory, and went through the act of correcting it, which was not necessary.

The petition and proof shows that Stone was elected, at the general election in 1894, to the office of commissioner of Woods county, by the voters of the whole county. The length of his term was regulated by statute, and any act of the officers in fixing his term could not affect such term by either shortening or lengthening it. The statute then in force was controlling in this matter. Sections 1767, 1768, St. 1893, read as follows:

"SEC. 1767. At the first election held after the passage of this act for choice of county officers, there shall be chosen by the voters of the whole county, three county commissioners, who shall hold their offices as follows: The member having the highest number of votes shall hold his office until the first Tuesday in January, one thousand eight hundred and ninety-five, and the other two until the first Tuesday in January, one thousand eight hundred and ninety-three, and all of them shall hold until their successors are elected and qualified.

When the county shall be divided into districts as provided by section 2 of this act, the district in which the member holding until January, one thousand eight hundred and ninety-five, resides, shall be designated as the First commissioner's district, and the others numbered as Second and Third districts. At the general election in November, one thousand eight hundred and ninety-two, the voters in the Second district shall elect a county commissioner who shall hold his office for four years from the first Tuesday in January following his election, and the voters in the Third district shall at the same election elect one member, who shall hold his office for two years from January, one thousand eight hundred and ninety-three. At the general election in November, one thousand eight hundred and ninety-four the Third district shall elect one member for four years, and the voters of the First district shall elect one member for two years. At the general election held in November, one thousand eight hundred and ninety-six, the voters of the First district shall choose a member for four years and the legal voters of the Second district shall choose one member for two years, and so on in rotation among the districts at each biennial election. If there be a vacancy a successor shall be chosen for the unexpired portion of the term made vacant.

"Sec. 1768. Each county shall be divided by the board of county commissioners elected under this act into three compact districts as equal in population as possible, numbered respectively one, two and three, and subject to alteration at least once in three years, and one commissioner shall be elected from each of said districts by the voters of the district, as heretofore provided; but if in any county the aforementioned board of county commissioners shall fail to make such division before any election for county commissioners, such failure shall in no case prevent the election of said commissioners, and no person holding any state, county, township, or city office, any employee, officer or stock-holder in any rail-

road in which the county owns stock, shall be eligible to the office of county commissioner."

By these provision specific directions are given for the length of terms of each member of the board of county commissioners, up to and including the election of 1896. It is true this statute was enacted for Oklahoma before the Cherokee Outlet was a part of the Territory, but, as soon as the Outlet became open to settlement, it became part of the Territory, and subject to all the laws of the Territory; and the application of this statute must be made to the conditions in the new counties, the same as if they had existed from the beginning of the Territory, and the terms of the officers of the new counties must be made to conform to the terms of the officers in the old counties, as fixed by this statute. There need have been no difficulty in making this application. The statute is specific in its directions, and fixes the exact length of term of each member of the board, from the organization of the county to an indefinite period, and in terms sets out and enumerates the districts by number, and the term for which the member shall be elected in each district for the elections in the years 1892, 1894, and 1896, and these years cover the period embraced in the controversy in this case.

The first election was held in Woods county in November, 1894. At that election Lappin, Bishop, and Stone were elected commissioners by the voters of the county. It was their duty to divide the county into three compact districts, and number them 1, 2, and 3, and these districts were then only subject to change once in three years. After this the voters of each district were authorized to elect the commissioner for the district in which they reside. The board created these districts in Jan-

uary, 1895, at their first session, and, Lappin having received the highest number of votes at the election, the district in which he resided was numbered 1, the district in which Bishop resided was numbered 2, and the district in which Stone resided was numbered 3. The board had the power to create these districts, and to number them, and their act became conclusive on the electors and residents of the county. Now, what was the result of this action of the board in relation to the terms of office of its members? The statute says: "At the general election in November, one thousand eight hundred and ninety-four, the Third district shall elect one member for four years, and the voters of the First district shall elect one member for two years." In order to make these terms conform to the intent and purpose of the law, we must look back to the statutory provisions for the election in 1892; and, giving all the provisions equal force and effect, the result is that in district No. 1 the first term would have ended in January, 1895; the term for district No. 2 would end January, 1897; and the term in district No. 3 would end in January, 1899. So that it will be seen that at the time these districts were created, and the members became officers of particular districts, No. 1, Lappin, took a full two years' term; No. 2, Bishop, took an unexpired term, with two years to run; and No. 3, Stone, took a full four years' term. Thus, Lappin's term would expire January, 1897; Bishop's, January, 1897; and Stone's January, 1899. Now, apply the statute providing the terms for the members to be elected in 1896, which is: "At the general election held in November, one thousand eight hundred and ninety-six, the voters of the First district shall choose a member for four years, and the legal

voters of the Second district shall choose one member for two years." The result of this arrangement is in harmony with the general purpose of the statute; and in November, 1896, No. 1 should elect a member for a four-year term, and No. 2 should elect a member for a two-year term. The member for No. 3 having gone in for a full four-year term in 1895, and no election being provided for that district for the year 1896, the incumbent, Stone, would hold until January, 1899. This rotation was arranged by statute, in order that the board would always be composed of at least one experienced member.

If we were in doubt as to the proper application of this statute to the conditions in newly-organized counties, there could be no room for contention as to the meaning and effect of the provision prescribing which districts should elect members at the general election in 1896, and the length of term for which each member is to serve. Counties are but sub-divisions of the Territory, created for governmental purposes, and the inhabitants derive their authority to hold elections and elect officers from the legislature; and where the law makes no provision for an election, or gives no authority to elect an officer, such right or authority cannot be legally exercised, and any election held at any other time, or for any other purpose, than that fixed by statute, will not be legal or valid.

The statute having specifically authorized an election for members of the board in districts 1 and 2, at the general election in 1896, excludes the authority to hold such election in district No. 3, and the election held in district No. 3, in 1896, by virtue of which the respondent, Reynolds, claims title to the office of commissioner in Woods county, was unauthorized. and conferred on him

no right to hold the office as against a rightful incumbent. The allegations in the petition and the proof submitted at the trial fully sustain Stone's right to the office of county commissioner of the Third district of Woods county for a term of four years from the first Tuesday in January, 1895, and the defendant having wrongfully intruded himself into said office, and kept plaintiff out of it, the action of the district court in sustaining the demurrer and dismissing his cause of action, and giving judgment against him for costs, was erroneous. The judgment of the district court of Woods county is therefore reversed.

It is therefore ordered and adjudged that the judgment of the district court of Woods county be, and the same is, in all things, reversed, set aside, and vacated, at the costs of the defendant in error. It is further ordered and adjudged that the defendant in error, E. F. Reynolds, be, and he is hereby, ousted from the office of county commissioner in and for the Third district of the county of Woods and Territory of Oklahoma, and he is hereby ordered and directed to immediately turn over and deliver the said office to the plaintiff in error, A. W. Stone, together with all the books and papers belonging or appertaining to said office, now in his custody or under his control, and the said E. F. Reynolds is hereby excluded from said office, and restrained from exercising, or attempting to exercise, any of the powers, duties, or functions of said office, during the term for which said A. W. Stone was elected, to wit, until the first Tuesday in January, 1899.

Inasmuch as the question of damages in this cause was not in any manner determined by the trial court, said cause is remanded to the district court upon said

issue alone for further proceedings to determine what, if any, damages the plaintiff in error is entitled to, under the allegations of his petitions, and for the trial of said issue a new trial is ordered.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.