JUSTIN H. KERBY V. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF CLAY.

No. 14,097.   (81 Pac. 503.)

SYLLABUS BY THE COURT.

COUNTY COMMISSISONERS—*Conduct of County Business—Au-
thority.* The board of county commissioners is given the
management and control of the business and the financial
affairs of the county, and has the right to determine whether
actions shall be brought in its name to recover moneys al-
lowed and paid out of the county treasury without authority;
and the county attorney may not institute and carry on such
litigation without the consent and concurrence of the board.

Error from Clay district court; SAM KIMBLE, judge.
Opinion filed July 7, 1905. Reversed.

*F. L. Williams,* and *Hazen & Gaw,* for plaintiff in
error.

*W. P. Anthony,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Justin H. Kerby was formerly
county clerk of Clay county.   In addition to a fixed
annual salary of $1200, and an annual allowance of
$400 for clerk hire, the board of county commissioners
awarded and paid him compensation for official serv-
ices, including the preparation of abstracts and cer-
tificates of election, the making of assessment rolls,
the drawing of juries, the burning of old ballots, and
also for additional clerk hire.   To recover back these
extra allowances, amounting to $567.80, the county at-
torney brought an action in the name of the board of
county commissioners, but without the consent of
that tribunal or any of its members.   Afterward the
board in regular session unanimously passed a reso-
lution opposing the prosecution of the action, and
directing the dismissal of the same.   A motion to dis-
miss was presented to the court, including the resolu-

.tion directing the discontinuance of the proceeding, but the court denied the motion, and upon a trial determined that the fees had been illegally paid and gave judgment against Kerby for the amount.

Assuming, without deciding, that the extra fees paid were unauthorized, the court is of the opinion that the county attorney had no authority to bring and conduct the action without the concurrence or consent of the board of county commissioners. The allowance of fees and claims, as well as the management and control of all the business and financial affairs of a county, are confided to the board of county commissioners. It is the executive branch of the county government, and the representative and guardian of the county as to all its corporate affairs. Among other things the statute provides:

"The board of county commissioners of each county shall have the power: . . . *Second,* to examine and settle all accounts of the receipts and expenses of the county, and to examine and settle and allow all accounts chargeable against the county; and when so settled, they may issue county orders therefor, as provided by law. . . . *Fifth,* to represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law." (Gen. Stat. 1901, § 1621.)

These powers, so broadly given, repose the responsibility and control of county affairs in the board, and they must be assumed and exercised by that tribunal, unless specifically conferred upon other officers. This authority is nowhere divided with the county attorney. On the other hand he is made the legal adviser of the board, and is required to give opinions and advice to the board upon its request on all matters in which the county is interested. (Gen. Stat. 1901, § 1779.)

A section of the statute invoked as authority for the action of the county attorney reads:

"It shall be the duty of the county attorney to ap-

Kerby v. Clay County.

pear in the several courts of their respective counties, and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested." (Gen. Stat. 1901, § 1777.)

As will be observed this provision does not expressly transfer the control of the business or finances of the county to the county attorney. He is not empowered to determine what claims shall be allowed or disallowed, nor whether costs shall be incurred in litigation as to a purely business matter of the county. As was said in *Waters v. Garvin*, 67 Kan. 855, 73 Pac. 902, "the board of county commissioners of each county has charge of all litigation in which the interests of the county are involved." The quoted statute makes it the duty of the county attorney to appear in the courts of his county and prosecute or defend all proceedings in which the county is interested. This gives him authority to act as the attorney for the board in county affairs, but it is evident that the legislature did not, in this indirect, blind way, intend to withdraw the management and control of the business of the county, which had been expressly conferred upon the board, and vest it in the legal adviser of the board. If so every claim allowed and paid by the board might be reopened and contested at the instance of a county attorney by merely asserting that they were not authorized by law.

In Texas there was a contention that the district attorney might, at his own option, and without the knowledge or consent of the county commissioners, bring an action to recover money alleged to have been illegally paid. The court, in denying the contention, remarked:

"Expensive and often unnecessary litigation would in many instances occur, inducing financial embarrassments and absolute losses to the county, against which

the official guardians of the county's interest in financial matters would be often rendered impotent to protect. The existence of such a right, in discord and conflict with the powers and duties of the commissioners' court, would promote confusion, create uncertainty and doubt, and in the end might paralyze the power of that court to efficiently regulate the financial affairs of the county." (*Looscan v. County of Harris,* 58 Tex. 511, 515.)

Section 1649 of the General Statutes of 1901, providing for the recovery of unauthorized allowances, carries no intimation that this part of the county business shall be taken from the board and imposed upon the county attorney.

In the state of Ohio, where the county commissioners are vested with substantially similar powers to our own, it was held that the control of such matters belongs to the county commissioners rather than to the prosecuting attorney. In the case of *The State, ex rel., v. John Zumstein et al.,* 4 Ohio C. C. 268, 270, it was said:

"There can be no question but that the board of county commissioners, the financial representatives of the county, is the body having the right to sue for and recover all sums of money due to the county, unless the statutes of the state specifically in certain cases impose that duty upon, or give that right to, some other officer or person—and no other person or officer is authorized to sue for or recover any such money demand unless the right to do so is conferred by statute."

(See, also, *State of Ohio v. Cappeller,* 8 Ohio Dec. [reprint] 546; *Ventura County v. Clay,* 119 Cal. 213, 51 Pac. 189.)

The language of the court of appeals in *Roe v. Comm'rs of Elk Co.,* 1 Kan. App. 219, 40 Pac. 1082, to the effect that the county attorney may carry on such litigation without the concurrence or consent of the board of county commissioners, is disapproved.

Our holding that the board of county commissioners controls litigation in which the interests of the county

are involved does not put boards of county commissioners that transgress the law, or that act corruptly, beyond the reach of the law, nor leave the people without remedy. The county attorney may institute a variety of proceedings in the name of the state against unfaithful officers. They may be prosecuted upon criminal charges, and may also be removed from office in civil proceedings; and thus moneys wrongfully paid out may be recovered by their successors. (Gen. Stat. 1901, §§ 1852, 1855, 1856.)

The judgment of the district court is reversed, and the cause remanded with directions to grant the motion to dismiss the action.

All the Justices concurring.