DOLEZAL, *County Clerk, et al.* v. BOSTICK, *Co. Atty.*

No. 2998.   Opinion Filed February 28, 1914.

On Rehearing April 7, 1914.

(139 Pac. 964.)

1.   **COUNTIES—Proceedings of County Board.**   Where the law prescribes the mode which boards of county commissioners must pursue in the exercise of their powers, it, as a rule, excludes all other modes of procedure.

2.   **BRIDGES—Contracts—Validity—Counties.**   Under section 4, art. 1, c. 29, Sess. Laws 1903, advertisement and opportunity for competitive bids were essential to a contract under which a county was authorized to pay for the construction of bridges; and any agreement between the board of county commissioners and a bidder for the construction of bridges without such advertisement and opportunity for competitive bids, and in willful violation of the provisions of such section, was fraudulent and void.

3.   **SAME—Alteration of Contract—Validity—Counties.**   A valid contract for bridges, according to properly specified plans and specifications, under section 4, c. 29, Sess. Laws 1903, could not, without readvertisement and statutory opportunity for competitive bids, be thereafter changed, by agreement between the board of county commissioners and the accepted and contract bidder purporting to substitute other plans and specifications for those specified in the contract, so that the bridges may contain less and lighter material, and be of less value and first cost for the sole benefit of such bidder; and such agreement for such substitution is fraudulent and void.

4.   **INJUNCTION—Subjects of Relief—Issuance of County Warrant.**   A county clerk may be enjoined from issuing a warrant for payment of a claim allowed by the board of county commissioners for the construction of bridges under a void contract between such board and the claimant.

5. **SAME—Parties—Counties.** Section 1649, St. Okla. 1893 (section 1500, Rev. Laws 1910), requires all suits by a county to be in the name of its board of county commissioners, except where officers are authorized by law to sue in their official names for the benefit of the county.

6. **SAME.** A county attorney is not authorized to sue in his official name to enjoin the issuance of warrants as compensation for the construction of bridges under a void and fraudulent contract.

7. **SAME—Expenditure of Funds—Parties.** A county of the territory of Oklahoma was a subdivision thereof for public and political purposes, and such territory had sufficient interest to enable it to maintain suits to enjoin the officers of its counties from violation of trusts committed to their hands.

8. **SAME.** A county attorney, prior to statehood, was authorized to sue in the name of the territory of Oklahoma to enjoin the county clerk of his county from the issuance of warrants for the misapplication of county funds.

9. **APPEAL AND ERROR—Review—Amendments Regarded as Made —Parties.** Where a county attorney, as such, has sued for the benefit of the territory of Oklahoma to prevent the misapplication of county funds by its officers, without naming such territory as the plaintiff, where the cause of action, the issues made by the pleadings, the scope of the evidence for each of the parties, and the issues made thereby, and the relief given by the court, are clearly what they would have been if the suit had been in name, as it was in fact, by said territory, on the relation of such county attorney, and where no substantial right of the adverse party is affected to his prejudice, the petition will be treated as if here amended in the name of the proper party plaintiff.

10. **VESTED RIGHTS—Harmless Error.** Under the statutes of the territory of Oklahoma there was no such thing as a vested right in a harmless technical error, or defect in the pleadings and parties to an action.

11. **APPEAL AND ERROR—Harmless Error—Parties.** Under section 4018, St. Okla. 1893 (section 4791, Rev. Laws 1910), this court must disregard every error or defect which does not affect the substantial rights of the adverse party.

## On Rehearing.

12. **BRIDGES—Retroactive Laws—Reconstruction and Repair.** Under section 52, art. 5 (section 142, Williams'), Constitution of Oklahoma, a cause of action to enjoin issuance of county warrant upon claim theretofore allowed by the board of county commissioners in payment for bridges built in places of county bridges recently, in respect to time new bridges were built, destroyed by floods on principal streams of a county, without advertisement or opportunity for competitive bids, as required by section 4, art. 1, c. 29, Sess. Laws 1903, where suit thereon had been commenced, is not affected by a subsequently enacted statute (section 1, art. 4, c. 32, Sess.

Laws 1909), providing that "the board of county commissioners of any county in this state is hereby authorized to pay for the reconstruction or repairing of such county bridges as have been heretofore damaged or destroyed by floods, and including bridges where the same by reason of an emergency have been repaired or reconstructed by any person or persons without first having contracted to repair or reconstruct the same with said county commissioners: Provided, the authority granted by this section shall apply only to claims for repairing or reconstructing bridges previously owned by the county on the same site."

(Syllabus by Thacker, C.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by Charles R. Bostick, County Attorney of Noble County, against Joseph E. Dolezal, County Clerk of said county, and Henry Freygang and A. A. Trocon, a copartnership doing business in the name of the Midland Bridge Company, for injunction. Temporary injunction made permanent, and defendants bring error. Affirmed.

*Harris & Nowlin* and *Kenneth C. Crain,* for plaintiffs in error.

*Charles R. Bostick,* for defendant in error.

Opinion by THACKER, C. Plaintiffs in error will be designated as defendants and defendant in error as plaintiff, in accord with their respective titles in the trial court.

On August 17, 1906, after due advertisement and upon the lowest of nine bids received, the board of county commissioners of Noble county entered into a valid and binding contract in conformity with the provisions of section 4, art. 1, c. 29, Sess. Laws 1903, the same being section 7861, Comp. Laws 1909 (Rev. Laws 1910, sec. 7441), with the Midland Bridge Company, one of the defendants, whereby this defendant undertook to construct three bridges across principal streams in Noble county, in accord with plans and specifications prepared by the county surveyor as required by said section 4, and then on file in the office of the county clerk of said county, at an agreed price of $7,995; but on about September 3, 1906, without advertising, or any man-

ner of attempt to comply with the provisions of said section 4, and in the absence of other bidders, the defendant bridge company and the board of county commissioners agreed to substitute other and different plans and specifications prepared and proposed by defendant for those of the said contract of August 17, 1906, whereby the material to be used in the bridges was to be less and lighter, and in effect the value and first cost of the bridges were to be reduced, without any reduction in the price to be paid therefor by the county, of which price the county was to pay 50 per cent. on delivery of metal, 25 per cent. on delivery of lumber, and 25 per cent. on completion of bridge.

It is contended in effect by defendants that, after the contract of August 17, 1906, the defendant bridge company discovered it was short on material called for in the plans and specifications of the contract, and that the said substitution of other plans and specifications for a bridge, with less and lighter material, was made because there was a pressing demand and need for the speedy completion of these bridges, which could be best met by such substitution, without explanation of omission of corresponding reduction in the price to be paid by the county; but, in deference to the judgment of the trial court, we must assume that the substitution of plans and specifications was not in fact, nor intended to be, for the benefit of Noble county, and was solely for the convenience and benefit of this defendant.

On September 14, 1906, the commissioners and the bridge company, without any attempt to comply with any provision of said section 4, and without any meeting of said board, entered into an agreement, purporting to be a contract, whereby the company was to construct three additional bridges across principal streams of said county in accord with the plans and specifications for the smallest and least expensive of the bridges called for by the plans and specifications of the former contract, at an agreed price of $3,800, of which the county was to pay 50 per cent. when the metal was delivered, 25 per cent. when the lumber was delivered, and 25 per cent. when the bridges were completed; and it is claimed by defendants that these three additional bridges replaced three bridges immediately theretofore destroyed

by floods, so that an emergency existed which required that the parties dispense with the delay and formalities of compliance with said section 4; but, without indicating that an emergency agreement would be upheld as a contract in the face of the statute, in deference to the judgment of the trial court, we must assume that no emergency existed. The six bridges were actually constructed by the bridge company; but they were not in any instance constructed as required by the original plans and specifications; and the differences between the bridges for which the contract of August 17, 1906, and the agreement of September 14, 1906, called for and the bridges actually constructed were as follows: First, as to the three bridges called for by the contract of August 17, 1906: A bridge which should have been 140 feet long, with tubes 30 feet long and 36 inches in diameter, with truss 9 feet high on main span and 6 feet high on approach, with 52 2-10 cubic yards of concrete, and containing 43,062 pounds of structural steel, was made 130 feet and 10 inches long, with tubes 30 feet long and 30 inches in diameter, with truss 8 feet 6 inches high on main span, and 5 feet high on approach, with 21 6-10 cubic yards of concrete, and containing only 34,103 pounds of structural steel; a bridge which should have been 150 feet long, with tubes 30 feet long and 36 inches in diameter, with truss on main span 9 feet high and 7 feet 6 inches on approach, with 33 4-10 yards of concrete, and containing 52,026 pounds of structural steel, was made 150 feet long, with tubes 25 feet in length and 30 inches in diameter, with truss 8 feet 6 inches high on main span and 6 feet on approach, with 19 8-10 yards of concrete, and containing only 43,978 pounds of structural steel; a bridge which should have been constructed with tubes, with 16 cubic yards of concrete, and containing 12,131 pounds of structural steel, was made with eyebeams instead of tubes, with 9 cubic yards of concrete, and containing only 9,976 pounds of structural steel; and, second, the three other bridges, being the ones to which the agreement of September 14, 1906, relates, were constructed with 10 cubic yards of concrete less than required by the plans and specifications therefor. It appears that the bridges actually constructed contained at least 19,162 pounds of

structural steel and 72 cubic yards of concrete less than required by plans and specifications called for by the contract of August 17, 1906, and the agreement of September 14, 1906; and it further appears that structural steel was worth about 7½ cents per pound, and concrete $8 per cubic yard, to which advantage gained by defendant should be added perhaps the saving of the freight charges and cost of construction on account of the omitted steel, as the record indicates that the price of 7½ cents per pound for steel may relate to that material before shipment for the purpose of being placed in bridges.

At the commencement of this action the warrants of Noble county had been issued and paid to the defendant bridge company to the amount of 75 per cent. of the $11,795 which the commissioners had agreed to pay for the six bridges, leaving only a balance of $2,948.75 unpaid; and, the reasonable value of the bridges as actually constructed not being shown, it does not appear whether such value had been thus paid. This action was by plaintiff, as county attorney of Noble county, against the defendant, Joseph H. Dolezal, as county clerk of that county, and the defendant bridge company, as claimant, to enjoin the clerk from issuing any warrant for any part of said balance of $2,948.75 and the defendant bridge company from collecting same. A temporary injunction was issued immediately after the filing of the petition, and was continued in force until the final hearing in March, 1911, when the same was made permanent.

The provisions of said section 4, Sess. Laws 1903, were obviously intended to prevent just what occurred in the transactions between the board of county commissioners and the defendant bridge company, out of which this suit arose, i. e., they were intended to insure the obtaining of the lowest possible bid for the construction of bridges, to prevent the letting of contracts for bridges to any but the lowest responsible bidder, and to prevent such frauds upon the counties as the evidence discloses was perpetrated in the present case upon Noble county; and, to this end, it required, as a prerequisite to a valid contract for the construction of any such bridges, advertisement by newspaper publication and by posting for four consecutive weeks for bids

to construct the bridge in accord with plans and specifications prepared by the county surveyor and at the time on file in the office of the county clerk.

Where the law prescribes the mode which boards of county commissioners must pursue in the exercise of their powers, it, as a rule, excludes all other modes of procedure.

In the present case there appears to have been a deliberate, willful, flagrant, and inexcusable violation of the provisions of said section 4, for the sole benefit of the defendant bridge company at the great expense of the county; and the pretended contracts of September 3 and 14, 1906, under which the bridges were constructed, were fraudulent and void. *Allen et al. v. Board of Com'rs of Pittsburg County,* 28 Okla. 773, 116 Pac. 175; *National Drill & Mfg. Co. v. Davis,* 29 Okla. 625, 120 Pac. 976; *Garvin County v. Lindsay Bridge Co.,* 32 Okla. 784, 124 Pac. 324; *Harlow v. Board of Com'rs of Payne County,* 33 Okla. 353, 125 Pac. 449; *Salt Creek Twp. Lincoln County. v. King Iron Bridge & Mfg. Co.,* 51 Kan. 520, 33 Pac. 303; *Venango County v. Penn Bridge Co.,* 215 Pa. 199, 64 Atl. 445; *Dawson v. Woodhams,* 11 Colo. App. 394, 53 Pac. 238; *Richardson v. Grant County* (C. C.) 27 Fed. 495; *Leflore County v. Cannon,* 81 Miss. 334, 33 South. 81; *Pacific Bridge Co. v. Clackamas County* (C. C.) 45 Fed. 217; *State v. Yeatman,* 22 Ohio St. 546.

We need only to refer to the case of *Harlow v. Board of Com'rs, supra,* as authority for the statement that an injunction is a proper remedy to prevent the issuance of warrants for the payment of the $2,948.75 balance claimed by the defendant bridge company under these illegal and void contracts. But the plaintiff's authority and right to maintain this action is challenged both by demurrer and answer; and the question thus presented justifies our inquiry as to who may be a proper party to bring and maintain such an action.

Soon after the examination of the first witness was begun the question of amending the plaintiff's petition was discussed between the court and the plaintiff, and the following colloquy between the court and the plaintiff occurred:

"By the Court: * * * But then there is no showing on that part as to whether or not you are still in office, I presume; go ahead, I hold that you have the right to bring the suit in behalf of the people as county attorney.

"By the Plaintiff: Well, it will be impossible for Mr. Cowley to bring the suit, because he is disqualified.

"By the Court: You could amend it in his name at the present time.

"By the Plaintiff: Well, I will ask leave at this time.

"By the Court: I don't know, they have not made any charge of that kind: that you are out of office or in office, or any other place; the allegation is that you are county attorney and they have not denied it.

"By the Plaintiff: It is admitted anyway."

The defendant remained silent as to the question discussed between the court and the plaintiff; and, as the record discloses no specific reference to the omission of the use of the name of either the territory of Oklahoma or the board of county commissioners as plaintiff, it appears that the alleged want of capacity in plaintiff of which defendant complains was perhaps understood by both the court and the plaintiff to relate to the question suggested by the foregoing colloquy. The statement of the court during the aforesaid colloquy, to the effect that Charles R. Bostick, as county attorney, had the right to prosecute the suit "in behalf of the people" without objection by either party, tends to show that it was then understood that said Charles R. Bostick, as county attorney, was merely a relator for the territory of Oklahoma in the case, and that an amendment of the petition specifically showing this might then have been made by him.

It appears indisputable that Noble county, in the name of the board of county commissioners, might have brought and maintained it. See sections 1646, 1648, and 1649, St. Okla. 1893, same being sections 1497, 1499, and 1500, Rev. Laws 1910; also *Harlow v. Board of Com'rs, supra.*

And, in the absence of a showing to the contrary, authority of the commissioners will be presumed when the suit is in their name. *Nolan v. St. L. & S. F. R. Co.,* 19 Okla. 51, 91 Pac.

1128; *Burkett v. Lehmen-Higginson Grocery Co.,* 8 Okla. 84, 56 Pac. 856; *County of San Luis Obispo v. Hendricks,* 71 Cal. 242, 11 Pac. 682.

It appears equally clear that any taxpayer of that county might have done so. See *Harlow v. Board of Com'rs, supra; Sexton v. Smith et al.,* 32 Okla. 441, 122 Pac. 686; *Bowles v. Neeley, Mayor, et al.,* 28 Okla. 556, 115 Pac. 344; *Hannan v. Board of Education,* 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214; *Kellogg v. School Dist. No. 10,* 13 Okla. 285, 74 Pac. 110. But this suit is not brought in the name of the board of county commissioners, nor does it appear, either by allegation or proof, that the plaintiff was a taxpayer of the county.

The right of the plaintiff, as county attorney, to maintain this action depends upon whether there is statutory authority for him, as such and in his own official name, to bring and maintain the same. We assume that plaintiff's description of himself as county attorney, when considered in connection with the nature and character of the action, justifies the construction of the petition as a suit by plaintiff *as county attorney* and not merely as an individual, although it is not specifically alleged that he does sue as such.

Section 1646, *supra,* reads:

"Each organized county within this territory shall be a body corporate and politic and as such shall be empowered for the following purposes: First. To sue and be sued.   *   *   *"

Section 1648, *supra,* reads:

"The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners."

Section 1649, *supra,* reads:

"In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be 'Board of County Commissioners of ————,' but this provision shall not prevent county officers, where authorized by law, from suing in their name of office for the benefit of the county."

The words "where authorized by law," as used in section 1649, *supra,* and in respect to the county attorney, probably refer to such specific authorization as is found in the statutes making

it the duty of the county attorney to sue without regard to the board of county commissioners.

There appears to be no general statute, nor any specifying such cases as the present one, in which the county attorney is "authorized by law" to sue "for the benefit of the county," unless in section 1765, St. Okla. 1890 (section 1554, Rev. Laws 1910). It seems clear that this section (1765) when construed in connection with sections 1646, 1648, and 1649, *supra*, merely requires that the county attorney shall serve his county as counsel and attorney at law, and does not authorize him to exercise any of the powers of the same as a "body corporate and politic," which powers section 1648, *supra*, expressly declared shall be exercised by its board of county commissioners.

Said section 1765, except as to name of the office, is identical with and was probably taken from section 428, art. 3, c. 8, Political Code Comp. Laws of Dakota 1887; and, in the case of *Hughes County, S. D., v. Ward* (C. C.) 81 Fed. 314, where this section of the Comp. Laws of Dakota, and section 591, *Id.* (the latter section providing that the commissioners "shall have power to institute and prosecute civil actions in the name of the county, for and in behalf of the county") are considered, it is said:

"I am of the opinion that the authority of the state's attorney in this regard was limited to prosecuting and defending suits already instituted by or against the county, and that he exceeded his power when he brought this action without a lawful direction to do so by the board of county commissioners of Hughes county."

In *Kerby v. Board of County Com'rs*, 71 Kan. 683, 81 Pac. 503, the same view was taken, where all the statutes relating to this subject (sections 1611, 1613, 1615, and 1796, Gen. Stat. 1889, Kan.) are identical with our own except section 1796, *Id.*, prescribing the duty of the county attorney which, though in substance the same as our own, reads as follows:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties, and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

However, in *Board of Education v. Territory ex rel. Taylor,* 12 Okla. 286, 70 Pac. 792, and in *State ex rel. Huston, Judge,* 27 Okla. 606, 113 Pac. 190, 34 L. R. A. (N. S.) 380, it is held in effect that the county attorney may, upon his own initiative, in the name of the state, bring suit to enjoin territory or state officers, other than the Governor, from misapplying public funds; and the statutory warrant for this holding is found in said section 1765, St. Okla. 1890, which reads as follows:

"It· shall be the duty of the county attorney of the several counties to appear in the district courts of their respective counties and prosecute and defend, on behalf of the territory, or his county, all actions or proceedings, civil or criminal, in which the territory or county is interested or a party.   *   *   *"

No reason can be found in the language of this or any other section of the statute for admitting the authority of the county attorney, as such, and upon his own initiative, to sue in the name of the territory to enjoin territorial officers from misapplying territorial funds and denying him the authority to do so to enjoin county officers from misapplying the funds of the county; and this section is the only authority for such suit in either case.

Indeed, it appears that it has been uniformly held under the Kansas statute (section 1796, *supra*) that the county attorney, upon his own initiative may, in the name of the state, bring and maintain such suit to prevent the misapplication of county and even city funds. *State ex rel. Reed, Co. Atty., v. Com'rs of Marion County et al.,* 21 Kan. 308; *County of Harvey v. Munger,* 24 Kan. 150, opinion at page 153; *State ex rel. Lewis, Co. Atty., v. Eggleston et al.,* 34 Kan. 714, 10 Pac. 3.   Also *State ex rel. Miller, Co. Atty., v. City of Kansas City,* 60 Kan. 518, opinion at page 525, 57 Pac. 118, opinion at pages 120-121; *Sedgwick County v. State ex rel. Atty. Gen., etc.,* 66 Kan. 634, opinion at page 637, 72 Pac. 284, opinion at page 285; *State ex rel. Faulkner, Co. Atty., v. Board of Com'rs of Cowley County et al.,* 86 Kan. 201, 119 Pac. 327.

"A county is a territorial subdivision of the state created for public and political purposes connected with the administration of the state government." (*Frantz v. Autry,* 18 Okla. 561, 91 Pac. 193, and *Stone v. Reynolds,* 7 Okla. 397, 54 Pac. 555.)

And the authorities hereinbefore cited show that the state has sufficient interest in preventing violations of the trust committed to the hands of the officers of its counties to bring and maintain such a suit as the plaintiff has brought. in the present case.

In the case of *Missouri, K. & T. Ry. Co. v. Wulf,* 226 U. S. 570, 33 Sup. Ct. 135, 52 L. Ed. 355, where plaintiff in the first instance sued in her individual capacity and was allowed more than two years thereafter to amend so as to sue in her capacity as administratrix, the court said:

"It seems to us, however, that, aside from the capacity in which the plaintiff assumed to bring her action, there is no substantial difference between the original and amended petitions. * * * The change was in form rather than in substance. *Stewart v. Baltimore & O. R. Co.,* 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537."

Also see *American Ry. Co. of P. R. v. Birch,* 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879.

In *McDonald v. State of Nebraska,* 101 Fed. 171, 41 C. C. A. 278, it is said:

"Under the Code in Nebraska there is no such thing as a vested right in a technical error or defect in the pleadings or the parties to the action. No error or defect can be regarded which does not affect the substantial rights of the adverse party. Whether the judicial demand upon the bank and its receiver to repay to the state the money of the state which the bank had received and retained should be made in the name of the state * * * in his official capacity was purely a technical legal question, which in no wise related to the merits of the cause of action. The cause of action was not changed in the slightest degree by substituting the state of Nebraska as plaintiff in place of the treasurer of the state."

And we think the same is true under our own statutes. See section 5679, Comp. Laws 1909 (section 4790, Rev. Laws 1910) ; section 5680, Comp. Laws 1909 (section 4791, Rev. Laws 1910).

In *Howard v. United States,* 102 Fed. 77, 42 C. C. A. 169, it is held:

"The fact alone that an action was brought in the name of the wrong party as plaintiff is not ground for reversal, but the appellate court will direct the substitution of the proper party."

In the opinion in *Braker v. Deuser*, 49 Pa. Super. Ct. 215, decided in 1912, it is said:

"Objection is made that the action is brought in the name of the husband and agent of the owner, and not in her own name. It was a mistake to include the name of the agent as the right of action was in the wife. The acts of her husband in collecting the rent are recognized and ratified, however, as she only claims for the period for which rent was not paid. The declaration sets forth a cause of action very clearly as a right existing in Fannie Braker, and the question passed on was whether she was entitled to recover rent. An amendment of the record might have been made in the court below, for in the pleadings Fannie Braker was the party whose right was being enforced, so an amendment would have been clearly within the rule stated in *Adams v. Edwards*, 115 Pa. 211 [8 Atl. 425], and such amendment should be considered as having been made in the court below, or in this court when the case was fully heard and no right of the defendant abridged. The objection is technical and formal, and insufficient, in the present state of the record, to justify a reversal. *Com. v. Mahon*, 12 Pa. Super. Ct. 616."

Also see following cases: *Hurst v. Brennen et al.*, 239 Pa. 216, 86 Atl. 778; *Elmore v. McCrary, Adm'r*, 80 Ind. 544; *Krutz et al. v. Howard*, 70 Ind. 174; *Mee v. Fay*, 190 Mass. 40, 76 N. E. 229; *Hill v. Reed*, 23 Okla. 616, 103 Pac. 855; *Carson v. Vance*, 35 Okla. 584, 130 Pac. 946; *Kaufman v. Boismier et al.*, 25 Okla. 252, 105 Pac. 326.

In the case of *Missouri, K. & T. Ry. Co. v. Lenahan*, 39 Okla. 283, 135 Pac. 383, it is stated:

"Were no question presented to us save the naked legal proposition of the right to substitute or make new parties pending an appeal, and the facts connected therewith were admitted, we would be greatly disposed to grant the motion    *    *    *"
—but in that case there were questions of fact to be determined before any necessity could arise to determine whether such substitution might be made on appeal, or how the same should be made, which of itself differentiates it from the present case.

If the name of the state should be substituted for that of the county attorney as the plaintiff, the original plaintiff, the

county attorney, would continue to be the relator, and suit would continue to be for the benefit of the same party plaintiff.

We cannot, of course, direct the substitution of the board of county commissioners as plaintiff, as we have not so much as a request for such substitution as evidence of authority from that board to do so; and we cannot substitute a plaintiff without authority to do so. But may we not properly direct or permit the substitution of the state of Oklahoma as successor to the territory of Oklahoma, on the relation of the present county attorney of Noble county, Okla., or treat such amendment as having been made? And should we not do this? This action was immediately beneficial to the county, but was necessarily brought for the benefit of the territory, of which that county was a subdivision, "for public and political purposes connected with the administration of the territorial government," and, technically speaking, the plaintiff, as county attorney, and upon his own initiative and authority, could only have brought it in the name of the territory of Oklahoma. The issues and evidence, the cause of action and the relief sought, appear to have been just what they would have been in respect to the merits of this suit if the suit had been brought in the name of the territory on the relation of the county attorney; and it appears that plaintiff will suffer no wrong and lose no substantial right if a substitution of the state, on relation of the county attorney of Noble county, be directed, or if such amendment be treated as having been made in the court below or here.

Section 4018, St. Okla. 1893 (section 4791, Rev. Laws 1910), reads:

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Under this section of our statute, should we not disregard such defect in form as the omission of the petition to specifically name the territory of Oklahoma as the plaintiff and to show, by express and specific averment, that the county attorney is the relator for that plaintiff, when all this otherwise appears and is beyond question?

In our opinion this court, in deference to section 4018, *supra,* should treat the pleadings as amended so as to show that the territory of Oklahoma, on the relation of the county attorney, was the plaintiff in this action; and the judgment of the trial court should be affirmed.

## ON REHEARING.

It is urged in the petition for rehearing that the record does not justify our statement in the original opinion that "in deference to the judgment of the trial court, we must assume that no emergency existed," and that payment for the three bridges built under the agreement of September 14, 1906, was authorized by section 1, art. 4, c. 32, Sess. Laws 1909, which reads as follows:

"The board of county commissioners of any county in this state is hereby authorized to pay for the reconstruction or repairing of such county bridges as have been heretofore damaged or destroyed by floods, and including bridges where the same by reason of an emergency have been repaired or reconstructed by any person or persons without first having contracted to repair or reconstruct the same with said county commissioners; provided, the authority granted by this section shall apply only to claims for repairing or reconstructing bridges previously owned by the county on the same site." .

Section 52, art. 5 (section 142, Williams' Ann. Ed.), Constitution of this state, reads:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state.  After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

In our opinion, this provision of the Constitution clearly preserves to plaintiff its right to maintain its suit to enjoin the payment of the unpaid balance of $2,948.75, notwithstanding the subsequent enactment of section 1, *supra.*  Even if it be conceded that said section does not require action of the board of county commissioners, expressly finding all the essential facts, and also allowing claim for payment since the enactment thereof, and that it authorizes payment for such bridges as were recon-

structed or repaired before its enactment, under an agreement with the board of county commissioners made in violation of the provisions of section 4, art. 1, c. 29, Sess. Laws 1903 (section 7861, Comp. Laws 1909), which we do not decide, and even if it be further conceded that an emergency existed when said agreement was made, this section of the Constitution saves to plaintiff the right adjudged below.  But, adverting to the said statement in the original opinion of which defendants complain, it seems that this section 1 of the act of 1909 should be construed with and as in the nature of an exception to the general rule established by the provisions of said section 4, which makes advertisement and opportunity for competitive bids essential to a contract under which a county may pay for a bridge; and we think in the present case the burden was upon defendants to plead, as they did, and to prove, which they did not, such an emergency as made it necessary to dispense with advertisement and opportunity for bids, so we may at least say that there was no evidence of any emergency which would, if suit had not been commenced, bring these three bridges within the purview of the provisions of section 1, *supra,* and that the trial court so found. There was apparently no order of the board of the county commissioners declaring an emergency, and no evidence as to the necessities of public travel in respect to the roads upon which the bridges were built, except that they were mail routes, nor in respect to whether the streams were fordable at any convenient place, nor that one of these bridges replaced a bridge owned by the county, nor can we say with due deference to the judgment that the county commissioners had not sufficient time after the old bridges were destroyed in which to have complied with the requirements of said section 4 before September 14, 1906, in view of the fact that there was no more definite evidence in this regard than proof of the fact that the old bridges had "recently" been destroyed.

We deem it unnecessary to discuss any other proposition urged in the petition for rehearing.

The petition should be denied, and there should be adherence to the original opinion.

By the Court:  It is so ordered.