THE CLEVELAND SCHOOL FURNITURE COMPANY v. C. A. HOTCHKISS.

No. 371.—Decided January 23, 1896.

**1. School House Furniture—Purchase—Warrants.**

Under articles 3754-5-6, Sayles' Ed. Rev. Stats., school trustees could not bind the school fund for the payment of furniture purchased for school purposes: they were required to apply to the county judge for an appropriation for such purpose. He could upon such application make the appropriation and upon receipt of the furniture could draw warrant for the money. Warrants drawn by trustees were invalid. (P. 122.)

**2. School Trustees—Furniture for Schools.**

School trustees, in 1892, were not legally qualified to make contracts for the purchase of school furniture. A purchase by the trustees alone could not be lawfully executed. (P. 122.)

**3. Agency—Commissions.**

The agent acting under a contract by which he was to canvass in Texas and sell school furniture upon a commission, upon sales "lawfully executed," and to

"persons legally qualified to enter into contracts," could not recover commissions. upon sales made to school trustees without the authorization and concurrence of the county judge. (P. 123.)

**4.  Estoppel.**

That the non-resident principal, ignorant of the laws of Texas rendering invalid sales made by an agent, received invalid school warrants upon sales made by the agent, and paid half of the agent's commissions, does not estop such principal from showing the invalidity of the sales, and by so doing avoiding payment of commissions. (P. 124.)

**5.  Agency—Trust.**

A local agent for a non-resident principal, in making sales in the line of his agency, occupies a relation of trust; · and cannot insist that his principal, by relying upon his performance of his duty and virtual representation that the sales were lawfully made, is precluded from showing that the sales were not in fact legally made. (P. 124.)

**6.  Ignorance of Law.**

A local sales agent for a non-resident principal is not only presumed to know the law, but it was his duty, under a contract contemplating such knowledge in the business, to inform himself as to such laws and to conform to them in making sales. He cannot plead ignorance of the laws. A non-resident corporation is not presumed to know the laws of this State. (P. 124.)

Error to Court of Civil Appeals for Fifth District, in an appeal from Dallas County.

This was a suit by Hotchkiss to recover from the Cleveland School Furniture Company of Ohio for commissions, alleged to have been earned in sales of school-house furniture.

The contract under which commissions by the agent (the defendant in error) were claimed, and which is construed in the opinion, stipulated as follows:

"This contract made and entered into this —— day of July, 1892, between the Cleveland School Furniture Co., of Cleveland, Ohio, and Dallas. School Supply Co., of Dallas, Texas, witnesseth, that the said Dallas School Supply Co. do hereby agree to sell the school furniture and school supplies manufactured and sold by the Cleveland School Furniture Co., until December 31, 1893, in the State of Texas, with the exception of the counties lying north of Gaines, Dawson, Borden, Scurry, Fisher and Jones, and east of Throckmorton, Archer and Clay, and to thoroughly canvass, or cause the same to be done, for the sale of said school furniture and school supplies, in the territory above named, to circularize parties interested in the purchase of such goods, and to use all diligence in building up the reputation of the same; and further agree to engage in the sale of no other school furniture or school supplies while this contract is in force.

"The said Dallas Supply Co. agrees to take all orders for furniture and supplies upon the printed contract blanks furnished by said Cleveland School Furniture Co., and to use due precaution that they are properly and legally executed; that time sales shall draw at least seven per cent until paid, and to sell to such parties only as are fully responsible and legally qualified to enter into contracts, said contracts to be subject to the approval and acceptance of Cleveland School Furniture Co.  *   *   *·

"In consideration of these agreements the Cleveland School Furniture Co. hereby agrees to pay to said Dallas School Supply Co., upon each and every lawful contract procured by them, the excess of the price stipulated in this contract for the goods, on cars at any depot in Cleveland, Ohio, above the following schedule. (Here follows the schedule of prices.) * * *

"Commissions will be due and payable as follows: One half when orders are received and accepted, and balance when settlement is made with said Cleveland School Furniture Co., either in cash or by school warrants lawfully issued."

The letters referred to in the opinion and relied upon by the defendant in error, are as follows:

Of date July 28, 1892.

"We are glad to know that you have partially closed up another contract, and we hope that you will be able to get the school warrants in such a shape that they will be perfectly legal. Where you sell to private individuals, would say that we require security, unless they are rated in the commercial agencies perfectly good. We want to impress on you that when dealing with private individuals, unless Catholic priests, you must be very careful to see that their securities are gilt edged; otherwise the contract will be refused."

Of date August 8, 1892.

"In taking orders we shall also be very glad to have you exercise every care to see that all the orders are legally and properly taken, and that the warrants issued are in proper form before forwarding them. We have discovered that Texas paper is not considered gilt edge (?) in the banks, and they have specially recommended that we call your attention to this fact. Where the orders and warrants are properly taken and executed there will be no difficulty, and we earnestly hope you will co-operate with us in this matter."

On August 16, 1892:

"If we furnish the goods and are obliged to pay our agents their half commissions, we think that is about as much as should be expected of us. We should insist upon at least one-third cash payment when the orders are taken, and we do not object to taking good school paper for one or two years. As we remarked in our former letter, Texas paper does not stand very high in Ohio, and we have had some difficulty in convincing our bank that everything is all right."

On September 13, 1892:

"Would it not be possible to have these warrants approved by the County Superintendent or the County Judge? Our Mr. Tucker has had some of the warrants fixed up in this manner."

On September 15, 1892:

"We must have the assurance that the business you have sent us is

bona fide and that the warrants issued in payment of our furniture are legal and will be paid."

On September 19, 1892:
"The only thing that worries us is these school warrants. Our banks do not like them for the reason that the laws are so peculiarly constructed in your State. As we are now situated, and our ability to manufacture, our output can be marketed where we are perfectly certain there will be no drawbacks so far as warrants are concerned. We are anxious to do business in your State and wish to back you up in doing this. We wish you to protect us by satisfying yourselves that every order that is taken is bona fide, that it was taken in the regular manner, and if the goods are shipped they will be paid for according to the contract. Another feature of the warrant business is that there is a considerable expense attached to the collection. We must try to devise some scheme whereby the expenses for collection on these will be reduced to the minimum."

On September 22, 1892:
"We notice that you have again sent us school warrants due in '94 and '95, and we prefer not to fill this kind of orders. It takes the credit of the Standard Oil Co., or the government, to stand drains of this kind. If Texas paper was desirable we should have no trouble in depositing it as collateral, but our banks do not care to touch them, especially such lengthy warrants."

On September 24, 1892.
"In reference to order 57 from C. W. Wood.—From Mr. Wood's letter we infer that the directors hold themselves responsible officially and individually, but the County Judge puts a damper on our hopes, and he says that he cannot approve these warrants until the money is in the treasury. We cannot see the objection to making us good, especially when we trust the district and let them have the benefit and use of the goods. We think the Judge should take this view of it, and, in fact, all the County Judges, for it is nothing but business that we be protected."

On September 24, 1892, again:
"For the reasons already mentioned we trust you will favor us by getting the opinion of the Attorney General on these school warrants."

As requested, the defendant wrote to the Attorney General's office for an opinion on the legality of these school warrants, and received in reply an unofficial letter from an assistant in said office that he thought the warrants would be met when due.

Suit was for balance on account of commissions upon sales made for defendant by the plaintiff under the contract. The settlements for orders were made with so-called school warrants. These warrants were not valid. The defendant set up a counter claim for commissions al-

ready paid in ignorance of the invalidity of the school warrants, in which it had been paid by its agent, the plaintiff.

The plaintiff recovered. The judgment on appeal was affirmed in Court of Civil Appeals. In application for writ of error, the defendant, who was appellant, complained:

That the court érred in holding that the plaintiff below should not lose his commissions on account of the fact that the defendant (below) had failed to make collections on the furniture sold, and sustaining a judgment for the full amount of such commissions, when the contract under which the plaintiff was working provided that one-half of such commissions should be paid when the orders were accepted by the defendant, and the other half when settlement was made with defendant, either in cash or in school warrants lawfully executed, it not appearing that any such settlement was ever made.

The court erred in sustaining the action of the trial court in giving judgment for the second half of the commissions. on all orders sold, which, under the contract, was to be paid when settlement for the goods sold should be made with defendant, either in cash or by school warrants lawfully executed, it not appearing that any such settlement was made.

* * * In sustaining the action of the trial court in holding plaintiff entitled to recover commissions on invalid and illegal orders accepted by defendant without notice of their invalidity or of the facts making them invalid.

* * * In holding that plaintiff was entitled to recover commissions on invalid orders sold by him in Texas as agent of defendant, and accepted by defendant, a resident of Ohio, without notice of their invalidity or of the facts making them invalid, and in reliance upon the agreement of such agent (the plaintiff) that all such orders should be legally taken.

*Bell & Atwell,* for plaintiffs in error.—The execution by the purchasers of notes and school warrants unapproved by the County Superintendent, was not such a settlement as entitled appellee to recover the second half of his commission due when goods sold by him were settled for. Rev. Stats., Sayles' ed., arts. 3755-6; Manning v. Ins. Co., 10 Otto, 693.

The sales to school districts and communities on which appellee claims commissions, with one exception, were void for want of appropriation of money or tax to pay for them. Sayles' Stats., arts. 3754-7; Andrews v. Curtis, 22 S. W. Rep., 72; School District v. Perkins, 21 Kan., 536; Clark v. School Directors, 78 Ill., 474.

By the terms of appellee's contract, and in view of appellant's reliance on him to make sales lawfully, he could recover commissions only on lawful sales, although he is not shown to have acted in bad faith, and took orders on appellant's blanks.

Appellant had a right to rely on appellee, he being its agent and bound to the utmost good faith in dealing with appellant. Even adverse interest would not vary this right. Murrah v. Brichta, 9 S. W. Rep., 185; Kirkeys v. Crandall, 90 Tenn., 532; Culbertson v. Blanchard, 79 Texas,

486; Moreland v. Atchison, 19 Texas, 303; Ramey v. Allison, 64 Texas,. 697; 8 Am. & Eng. Encycl. Law, p. 636, note 1; Bethell v. Bethell, 92. Ind., 318; Tompkins v. Hollister, 10 Mich., 470.

*Morgan & Thompson,* for defendant in error.

GAINES, CHIEF JUSTICE.—The plaintiff in error was a corporation and was engaged in the manufacture and sale of school furniture. It. entered into a contract with the defendant in error, by which it engaged him to sell its products, in certain counties of the State of Texas, upon commission. The defendant in error was the plaintiff in the trial court, and brought this suit against plaintiff in error, the defendant below, to· recover commissions upon sales alleged to have been made in pursuance· of the contract.

The defendant in its answer denied all liability, and further pleaded in reconvention, claiming a recovery against the plaintiff, for commissions paid him under a mistake that they had been earned under the· contract, when in fact they had not been so earned.

The case was tried without a jury, and the plaintiff recovered a judgment for the full amount of his demand. The Court of Civil Appeals. having affirmed that judgment, for the purpose of reversing it, this writ of error was applied for and obtained.

There is no statement of facts in the record, but the trial judge filed his conclusions of fact, in which the evidence seems to be set out very much in detail. In course of the opinion, we will state only so much of the facts as we think necessary for the disposition of the cause.

By the terms of the contract, the defendant employed the plaintiff to· sell for it school furniture in the specified territory, and promised to pay as commissions the excess of price which should be obtained, upon sales. of the furniture, over and above certain prices named in a schedule,. which was incorporated in the agreement.

By a stipulation in the contract, the plaintiff bound himself "to take· all orders for furniture and supplies upon the printed contract blanks furnished by the said Cleveland School Furniture Co., and to use due precaution that they are properly and legally executed; that time sales. shall draw at least 7 per cent until paid, and to sell to such parties only as are fully responsible and legally qualified to enter into contracts, said contracts to be subject to the approval and acceptance of said Cleveland School Furniture Company." The contract also contained the following provision: "Commissions will be due and payable as follows: One-half when orders are received and accepted, and balance when settlement is made with said Cleveland School Furniture Company, either in cash or· by school warrants lawfully executed." With but few exceptions, the· purported sales, upon which commissions were claimed, were made to school districts and school communities. The statute in force at the· time these transactions took place provided for the purchase of furniture· for school houses by the trustees of school districts and school communities, but prescribed that, in the first instance, application should be.

made to the county judge for an appropriation from the funds belonging to the district or community as the case might be, for the purchase of the articles, and that he should make the appropriation therefor, and, further, that upon the receipt of the furniture a warrant should be drawn by him for the purchase money. (2 Sayles' Ann. Stats., arts. 3754-5-6.)

The court did not find that the law had been complied with in making the sales. On the contrary, it is to be inferred from the findings that the trustees attempted to make the purchase without first applying to the county judge and having him to make an appropriation for that purpose. Some of the purchases seem to have been made upon a long credit, for which we find no warrant whatever in the law. It was found that the warrants which were sent in by the plaintiff to the defendant were not drawn by the county judges, but by the trustees of the respective districts and communities. (See Andrews v. Curtis, 22 S. W. Rep., 72.)

It is apparent that in making the purported sales the plaintiff did not comply with his contract with the defendant. The contracts of sale were not "lawfully executed." They were not sales, because the trustees had not "legally qualified" themselves "to enter into" such contracts. The warrants which were sent in were void, because they were not drawn by the county judges of the respective counties. This is apparently conceded, but the claim on behalf of the plaintiff seems to be that the defendant had estopped itself from setting up this defense. We find, however, nothing in the facts found by the court to warrant this conclusion. The letters from the defendant to the plaintiff, which are set out at length in the court's findings, do not evince a purpose to waive any of the provisions of its contract with the plaintiff. On the contrary, they show to our minds that defendant's officers were anxious that the contracts should be executed in compliance with the laws of this State. The obvious purpose of these letters was to insist that the defendant should see that the contracts for the sale of furniture to school communities and districts should be legally executed. By no possible construction can they be tortured into a waiver of any right contracted for by the defendant in its agreement with the plaintiff.

Nor do we see how the case is altered by the fact, that the written agreement prescribes a blank form for the contracts which the plaintiff was to procure. The defense is not that the form is not such as was agreed upon, but that the contracts were not lawfully executed. To use the language of the written agreement, the trustees were not "persons legally qualified to enter into contracts" to purchase school furniture for their respective districts or communities; that is to say, they were without the power to purchase until they had applied to the county judge, and procured an appropriation for the purpose.

The court also found that the plaintiff, in making the sales, and the defendant, in accepting the contracts, both acted in good faith, believing that they were valid under the laws of Texas, but seems to have concluded that because their interests as to the matter of commissions were

adverse, the defendant by its acceptance misled the plaintiff to his prejudice, and therefore cannot complain of their invalidity. This contention, in our opinion, cannot be maintained. The defendant made the plaintiff its agent to make lawful sales, and stipulated that the contracts should be legally executed. He occupied a relation of trust, and it will not do to say that the defendant by relying upon his performance of his duty and his virtual representation that the sales were lawfully made, precluded itself from showing that such was not the fact. It would seem that there would have been no estoppel if both had been within the State (Moreland v. Atchison, 19 Texas, 303; s. c., 24 Texas, 164). But the defendant was a corporation organized under the laws of another State, doing business in that State, and was not presumed to know the laws of this State. (Id.)

The plaintiff was a citizen of this State, and he is not only presumed to know its laws, but it was his duty under his contract to inform himself as to such laws, and to pursue them in making sales. He cannot plead his ignorance as an extenuation of his failure to comply with the terms of his agreement. He was not entitled to recover.

The defendant having paid commissions upon void sales under a mistake of fact, was entitled to recover them back in its cross-action. But since it would require a somewhat tedious calculation at our hands to determine from the findings of the court the amount which it is entitled to recover, we will not render judgment here. Besides, it would seem that if the plaintiff can show that defendant has collected the money for the furniture sold, and has lost nothing by reason of the contracts not having been lawfully executed, it should not recover the commissions paid on such sales.

The judgment will be reversed, and, if the defendant is content to abandon its counter claim, judgment will be here rendered, that the plaintiff take nothing, and that defendant recover its costs. If not, the cause will be remanded.

Opinion January 23. Reversed and rendered January 27, 1896, the plaintiff in error having abandoned its counter claim.

*Reversed and rendered.*