## NATIONAL DRILL & MFG. CO. v. DAVIS.

No. 825. Opinion Filed November 14, 1911.

1. **HIGHWAYS — Taxation — Use of Funds — Official Duties and Powers.** Under section 1 of an act approved March 7, 1903 (Sess. Laws 1903, p. 240; sec. 7867, Comp. Laws 1909), the board of county commissioners may levy a general road and bridge tax on all taxable property in such county, and such fund when collected may be used in the discretion of such board in the building of roads and bridges in any portion of such county.

(a) Such fund may be expended by such board for the purpose of purchasing road machinery to be used by the township officers in the construction and repairing of roads.

(b) Such machinery remains the property of the county, to be used by the township board for such purposes, with the consent of the board of county commissioners.

2. **APPEAL AND ERROR—Presumption—Burden to Show Error.**

Error must affirmatively appear to have been committed in the exclusion of evidence in the trial court before a reversal on such ground may be had in this court.

(a) Certified copies of the records of G. county, relating to the transaction on which the action was based, having been offered in evidence by the plaintiff in error, the defendant in error objected, on the ground that the same was not properly authenticated, but such alleged copies, including the authentication, are not made a part of the record before this court. **Held,** that, in the absence of copies of such alleged certificate, this court cannot determine whether error was committed, and in that event no reversible ground is shown.

(b) Evidence excluded will not operate as reversible error unless it affirmatively appears to have been material under the issues framed.

3.  **TRIAL—Instructions—Refusal—Covered by General Charge.** The refused instructions, insofar as they correctly state the law, being covered by the general instructions, the plaintiff in error is not entitled to complain on review in this court.

(Syllabus by the Court.)

*Error from District Court, Woods County; R. H. Loofbourrow, Judge.*

Action by William Davis against the National Drill & Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*T. J. Womack* and *C. B. Stuart,* for plaintiff in error.

*Charles West,* for defendant in error.

WILLIAMS, J.   On September 15, 1905, the defendant in error, as plaintiff, instituted  an action against the plaintiff in error, as defendant, in the district court of Woods county, Oklahoma Territory, declaring in his petition upon a written contract, to recover the sum of $2,093, with interest from the 1st day of November, 1904, at the rate of seven per  cent  per  annum, specially alleging that he had performed "all the obligations resting upon him under the terms of his employment."

Paragraph (j.) of said contract upon which he declared is *in haec verba*:

"Said second party agrees to guarantee every sale made by him to be honest, fair, valid, and subject to no defense arising

from anything done, or suffered or omitted, by said second party."

The defendant answered, first, admitting the execution of the contract but denying all other allegations; and, second:

"That by the terms of said contract this defendant was to use its best efforts to fill orders promptly, but should not be liable to said second party in case the demand exceed the supply, or in case of inability from any cause to supply the demand; and were required thereby to allow said plaintiff as commission on sales made by him, 'providing goods have been shipped by said National Drill & Manufacturing Company and settlements effected by said second party, William Davis,' the excess of surplus received bv said National Drill & Manufacturing Company over and above the net price named on the reverse side of said agreement and which by the terms of said contract, should be full compensation or consideration for all of the undertakings' and doings of the plaintiff in selling, receiving, handling, storing, setting up and starting or in any wise dealing with such machinery, making collections and doing all things as therein provided.

"That said contract also provided: 'In no case shall commissions be allowed on orders taken and not accepted or not filled, or on machinery condemned.'

"That by the terms of said agreement commissions were to be 'only on full cash settlements, to be paid from the first to the 15th of the month following the receipt of the settlements by said National Drill & Manufacturing Company. Commissions on time settlements will be paid within 60 days after the receipt of settlements by said National Drill & Manufacturing Company. No commissions shall become due or payable on part settlement for any machine or article sold.'

"That by the terms of said contract it was agreed on the part of the plaintiff that: 'In case said National Drill & Manufacturing Company shall provide said second party with an expert to assist in canvassing for or operating machines, one-half of the commission to said second party on each sale made or aided by such assistance shall or may be retained by said National Drill & Manufacturing Company as compensation for the services of such expert.'

"It was further stipulated and agreed by the terms of said contract in clause 'H' thereof that: 'Said second party agrees that he will at his expense well and safely house or store and

keep in good order all goods or machinery on hand, at any time, and that all machinery shipped on orders obtained by him for any reason not received or accepted by the purchaser, or sent him at his request, shall be well and safely housed and stored and shall, at the request of said National Drill & Manufacturing Company be returned by said second party, free of the freight and all expenses to said National Drill & Manufacturing Company, at its option, either to the factory at Barberton, Ohio, or to the warehouse from which such machinery was shipped.'

"It was further stipulated and agreed between the plaintiff and this defendant in clause 'I' of said contract as follows: 'Said second party agrees to do and perform all labor, and pay all charges and expenses, after machinery is placed on cars at Barberton, Ohio, incidental or necessary in the selling, moving, handling, receiving, housing, storing, keeping in good order, setting up, delivering and starting such machinery, and instructing the purchaser how to adjust it for work, and collect and remit the price therefor to National Drill & Manufacturing Company.'

"It was further agreed by and between the parties to this action in clause 'J' of said contract that the plaintiff, 'said second party, agrees to guarantee every sale made by him to be honest, fair, valid and subject to no defense arising from anything done or suffered, or omitted by said second party.'

"It was also provided by the terms of the said contract in clause 'K' thereof that this defendant 'shall have at all times the right, by any agent authorized by it, to inspect and carry away any of the machinery or articles or any parts thereof remaining unsold, which may have been furnished by said National Drill & Manufacturing Company, wherever the same may be.'

"It was also further stipulated by the said plaintiff with this defendant in clause 'M' of said contract as follows:  Should said second party fail, for any cause to secure settlements as provided in clause 'A' of this article said National Drill & Manufacturing Company may at its option, send its agent into said territory to secure settlement, and deduct from any commissions that may be due from said second party or expenses incurred by said National Drill & Manufacturing Company in securing said settlements.'

"It is further agreed by the said plaintiff in clause 'N' of said contract that:  'In the event of a violation of said second party of any of the stipulations, conditions or provisions of this agreement, said second party shall forfeit any rights hereunder

and agrees to, and does hereby, release all claim to any commissions due him from said National Drill & Manufacturing Company.'

"It is further provided in said contract between the said plaintiff and this defendant in clause '5' of the said contract as follows: 'It is agreed by the parties hereto that should the National Drill & Manufacturing Company neglect to enforce or waive for the time being any provisions of this contract, at the time of violation by said second party, said neglect or temporary waiver shall not hinder or debar said National Drill & Manufacturing Company from enforcing said provisions subsequently, should its interests require it.'

"That on or about the 8th day of September, 1904, · the plaintiff in the above entitled action secured an order from the board of county commissioners of Greer county, Oklahoma, for three National Elevating graders and nine dump wagons * * *.

"That afterwards the three elevating graders and nine dump wagons were shipped as directed in said orders to the county commissioners of said county at Altus, Greer county, Oklahoma, and that upon the arrival of said goods at Altus, Oklahoma, the board of county commissioners of said county refused to accept them.

"That the plaintiff failed and neglected to perform the conditions of said contract and failed to safely house, store and keep in good order the machinery so shipped to the board of county commissioners at Altus, Oklahoma, and failed and neglected to return said goods described in said orders or any part thereof to the National Drill & Manufacturing Co., either to the factory at Barberton, Ohio, or to the warehouse from which such machinery was shipped, and failed, neglected and refused to pay the freight and all expenses incurred by the National Drill & Manufacturing Company in shipping the said machinery and disposing of same.

"That by reason of the failure of the said plaintiff to keep and perform the obligations of his contract with the defendant it was compelled and did send its agent, a Mr. Winters, to Altus, Greer county, Oklahoma, to effect a settlement and adjustment with the board of county commissioners of Greer county, at great expense to this defendant.

"That plaintiff had failed and neglected to use his best efforts to get settlement for the machinery shipped to the board of county commissioners of Greer county, Oklahoma, as aforesaid.

"That defendant's agent was unable to and did not secure settlement and adjustment with the board of county commissioners of said county for the three elevating graders and the nine dump wagons shipped to the said board upon the order forwarded defendant by the plaintiff.

"That afterwards the defendant's agent, Mr. Winters, sold one of the elevating graders and three of the dump wagons to the board of county commissioners of Greer county, and for which settlement was afterwards made with this defendant; but that this defendant was compelled to ship the remaining two elevating graders and the six dump wagons to Langdon, North Dakota, at great expense to the defendant.

"That the defendant has performed all of the conditions to the said agreement set out in plaintiff's petition and required of it to be performed; and that it has not waived any of the provisions of its contract with the plaintiff; but that the plaintiff has failed and neglected to use his best endeavors to get settlement for the machinery shipped to the board of county commissioners of Greer county, Oklahoma, as aforesaid; has failed and neglected to pay the freight on the three graders and nine dump wagons from Barberton, Ohio, to Altus, Oklahoma, amounting to $421.20; and has failed and neglected to pay B. J. Winters' expenses from Oct. 19, to November 13, 1904, amounting to $151.07; has failed and neglected to pay the salary of B. J. Winters for 25 days, amounting to $125; has failed and neglected to pay for the unloading and storing of graders and wagons amounting to $45; has failed and neglected to pay the freight on the two graders and six dump wagons from Altus, Oklahoma, to Langdon, North Dakota, amounting to $175.72; making a total expenditure which this defendant was compelled to and did lay out and expend on account of the neglect and failure of the plaintiff to keep and perform his contract with this defendant, in the sum of $917.79.

"That this defendant had allowed to the plaintiff the commission agreed upon by the terms of said written agreement, on one elevating grader sold by it to Greer county, in the sum of $600; by a commission on three wagons sold to Greer county, $120; by freight paid by Greer county on one elevating grader and three dump wagons, the sum of $140; making a total of $860.40.

"That by reason of the premises and the failure and neglect of the plaintiff to keep and perform his contract with the defendant, the said plaintiff, William Davis, is indebted to the

plaintiff [defendant] the National Drill & Manufacturing Company, on account in the sum of $5,739.  *   *   *"

The plaintiff replied to said answer, denying every and all of its allegations inconsistent with the allegations in his petition. The case was tried to a jury.    The defendant objected to the introduction of any evidence, on the ground that the plaintiff's petition did not state a cause of action, which was overruled, and exceptions saved.    After trial, a verdict was returned in favor of the plaintiff.    Motion for new trial was filed in due time and overruled and exceptions saved.    By this proceeding in error, the judgment of the trial court is sought to be reviewed.

The following questions are   raised:   (1)   Not   rendering judgment for defendant on the pleadings; (2) excluding certain evidence; (3) giving certain instructions; (4)   refusing   certain instructions; (5) not sustaining a demurrer to plaintiff's evidence.

1.    As to whether the court erred in not rendering judgment for the plaintiff in error on the pleadings, or admitting, over the objection of the plaintiff in error, any testimony on behalf of the plaintiff, on the ground that no cause of action had been pleaded, it is essential to determine whether the control, construction, and repair of highways during the year 1904 was exclusively under the township boards and township trustees, and had such boards also exclusive authority to make contracts for the purchase of road graders and road machinery for use in the respective road districts.    The statutes pertaining to such authority are as follows:

"The township trustees shall   receive   from   the   county treasurer the road taxes paid within their respective townships, and they shall be appropriated to the building of bridges, culverts, repairing of roads and the purchasing of necessary plows and scrapers for repairing roads within the respective road districts from which the same was collected under the supervision of the road overseer of such road district."    (Sec. 6107, Wilson's Rev. & Ann. Stat. 1903; sec. 5282, Comp. Laws 1909.)

"The township trustee of each municipal township is hereby made supervisor of roads within and for his township.    He is empowered to employ labor, buy material and superintend the building, grading and construction of roads and bridges within

his township as directed by the township board.   The township board shall divide the township into a convenient number of road districts to contain not less than nine square miles each, and appoint a road overseer in each district who shall hold said office until January 1st after the next general election, or until their successors are appointed, unless removed by said township board. Said road overseer, when so appointed, shall perform the duties required by law and shall receive for his services one dollar and fifty cents for each day actually and necessarily engaged in such work, not to exceed twenty-five days in one calendar year, which shall be paid in general township fund warrants drawn on the proper officer by the township board.   The township trustee shall receive as compensation for his services, as supervisor of roads, one dollar and fifty cents for each day actually and necessarily engaged in such work, not to exceed sixty days in one calendar year.   Provided, that no sum shall be allowed any road overseer or township trustee for services mentioned in this act until such officer has filed with the township board a verified claim stating when and where such work was done; and   Provided   further, that all claims for material furnished said township trustee, under the provisions of this act, shall be itemized by the claimant, verified by the trustee and audited by the board."   (Sec. 1, Act of Mar. 17, 1903; Sess. Laws 1903, p. 236.)

"The board of county commissioners may levy   a   general road and bridge tax on all taxable property in such county not to exceed six mills on the dollar of such taxable property, and which general road and bridge fund, when collected, shall be used in the discretion of the board of county commissioners, in the building of roads and bridges in any portion of such county according to the provisions of this act:   Provided, however, that the board of county commissioners may levy an additional tax, not to exceed four mills on the dollar, for the purpose   of   constructing bridges over any river or principal stream in said county: and Provided, that if such river or principal stream is the boundary between two counties, the board of county commissioners of such counties may, by agreement, jointly contract and pay for the construction of such bridge or bridges in accordance with the provisions of this act."   (Sec. 5, Act of Mar. 17, 1903; Session Laws 1903, p. 236.)

"The township board of any township in this territory may levy a general road and bridge tax on all taxable property in such township not to exceed five mills on the dollar of such taxable

property, and which general road and bridge fund, when collected shall be used in the discretion of said township board according to the provisions of this act." (Sec. 5, Act of Mar. 17, 1903; Session Laws 1903, p. 236.)

"The county clerk of each county shall furnish to each trustee and each road overseer within his county a booklet or pamphlet containing this act and all other acts and parts of acts relating to roads and bridges." (Sec. 15, Act of Mar. 17, 1903; Session Laws 1903, p. 236.) .

The language, "shall be used in the discretion of the board of county commissioners, in the building of roads and bridges in any portion of such county according to the provisions of this act" (sec. 5, *supra*), appears to authorize the expenditure of such money, under the direction of the board of county commissioners, for material and machinery to be used in the construction of roads in the respective townships. Obviously, the work on the roads must be done by the road officers of such townships, but the funds or machinery or material may be furnished and supplied in the discretion of the board of county commissioners. In *Allen et al. v. Board of County Commissioners of Pittsburg County*, 28 Okla. 773, 116 Pac. 175, it is said:

"It is a settled rule that the grant of powers to boards of county commissioners must be strictly construed, because when acting under special authority they must act strictly on the conditions under which the authority is given; that they can exercise only such powers as are especially granted, or as are incidentally necessary for the purpose of carrying into effect such powers; and where the law prescribes the mode which they must pursue, in the exercise of such powers, it, as a rule, excludes all other modes of procedure."

Does "within the discretion of said commissioners" mean that the commissioners can determine only as to what road districts the fund shall be expended in, and that then the fund shall be placed to the credit of such road district? That would be too narrow a construction. The authority being conferred by the statute upon the board of county commissioners to determine the necessity for such road and bridge improvement and for such tax levy, we conclude that a reasonable construction places the

power within the board of county commissioners to determine where and how the money shall be expended. If for road machinery, then it is that such machinery belongs to the county and may be used in different road districts by the road overseers of such district, in the discretion of the board of county commissioners. It follows that the court properly overruled the motion for judgment on the pleadings.

2. As to the exclusion of evidence, it is insisted that the court erred in excluding certified copies of the proceedings of the board of county commissioners of Greer county, Oklahoma, of July 5 and 25, 1904, relative to the county tax levy, and as to the allowance of claims in favor of the defendant on the road and bridge fund. Such certified copies nowhere appear in the record. On page 121 of the record we find the following:

"Mr. Womack: The defendant now desires to offer in evidence certified copy of all the commissioners' proceedings of Greer county, Oklahoma, for the year 1904, relating to tax levy of that county for road and bridge purposes for that year, and also a certified copy of the records of all the proceedings had and done by the board of county commissioners of Greer county, Oklahoma, in connection with or concerning a contract or contracts with the National Drill & Manufacturing Company. Mr. Noah: This is objected to as not properly certified, as not coming from an officer whose signature is conclusive proof, and incompetent, irrelevant and immaterial and not going to the issues in this case, the defendant having admitted the execution of the contract, and it being admitted that the order was approved in compliance with the same. The Court: I think the objection is good. The objection will be sustained. Mr. Womack: To which we except. Mr. Womack: I would like to make the offer a little more full. The Court: Very well. Mr. Womack: The defendant here offers in evidence a certified copy of the proceedings of the board of county commissioners of Greer county, Oklahoma, of July 5, 1904, relative to the county levy found in commissioners' proceedings, volume three, page two hundred and eighty-six, containing the estimate of the tax for the year 1904 for road and bridge purposes; also a certified copy of the proceedings of the board of county commissioners of Greer county, Oklahoma, for July 25, 1904, relative to the levy of the county commissioners, within volume three, page two hundred and

eighty-nine, also exhibit F, a certified copy of the proceedings of the board of county commissioners of Greer county, Oklahoma, January 2, 1905, relative to the payment of county warrant. Mr. Noah: To all of which exhibits, and the offer thereof, exhibits D, E, and F, the plaintiff objects separately and together, as being incompetent, irrelevant and immaterial, not the best evidence, and not tending to prove or disprove any issue in this case, and because the same are not properly certified. The Court: Objection sustained. Mr. Womack: To which the defendant excepts."

On page 173 of the record we find the following:

"Mr. Womack: If the court please, the defendant now renews the offer to prove by a certified copy of the records of Greer county, Oklahoma, that the contracts marked exhibits A and B, referring to the trial order for three graders and nine dump wagons, were unlawful and void by reason of being in excess of the power and authority of the board of county commisioners to make and enter into during the year 1904. Mr. Noah: To which offer the plaintiff objects as not being ' the proper procedure, and incompetent and irrelevant. We object to the introduction in evidence of exhibits D and E, as incompetent, irrelevant and immaterial, and not properly certified as' a public record, and because it does not anywhere show that it is all of the record pertaining to the transaction in question. One objection is that the answer in the case does not join the issue on the amount of the levy, the amount of valuation or the amount of money on hand. The other is that the certificate is not so clear and complete as to show whether or not there are other records which might show this, and further, there is no showing here of the condition of the fund, and that is all there is in issue so far as this evidence goes. The Court: The objection is sustained. Mr. Womack: To which the defendant excepts. Mr. Womack: The defendant now offers in evidence certified copy of the contract between the National Drill & Manufacturing Company and the board of county commissioners of Greer county, Oklahoma, of date of November 1, 1904, and marked 'Exhibit G.' Mr. Noah: To which the plaintiff objects as incompetent, irrelevant and immaterial and not within the issues of this cause. The Court: The objection is sustained. Mr. Womack: To which the defendant excepts."

None of these certified copies are contained within the record. The burden is upon the plaintiff in error to show error. The

presumption is that the action of the trial court is without error, and the certified copies, together with the certificates, not being contained in the record, we are unable to say affirmatively that there was any error. For the specific objection is made that the certificate is defective. The presumption is in favor of the ruling of the lower court, and that if the certificates were brought up such defect would appear. As to the offer of the certified copy of a certain contract between Greer county and the National Drill & Manufacturing Company, dated November 1, 1904, the specific objection that same is not material is made. Evidence excluded will not operate as reversible error, unless it affirmatively appears to have been material under the issues. *Herron v. M. Rumley Co., ante,* 116 Pac. 952.

3. The plaintiff having sued upon said contract and averred and alleged that he has "performed all the obligations resting upon him under the terms of his employment," and in paragraph (j) of the same he having agreed "to guarantee every sale made by him to be honest, fair, valid, and subject to no defense arising from anything done, or suffered, or omitted" by him, under this plain and unambiguous language he guarantees every contract to be valid. In addition thereto, he guarantees that it shall be subject to no defense arising from anything done, or suffered, or omitted by him. Section 1, chapter 16, Session Laws 1895, provides:

"It shall be unlawful for the board of county commissioners * * * to make any contracts for, or incur any indebtedness against the county in excess of eighty per cent for county expenses during the current year, nor shall any expenditures be made or indebtedness be contracted to be paid out of any of the funds of said county in excess of eighty per cent levied for said fund. If any such certificates of indebtedness be issued, or any indebtedness be incurred or contracted in excess of eighty per cent of the tax levied for that purpose for that year, such certificate, contract or debt shall not be a charge against the county, but may be collected, etc."

Section 4326, Wilson's Rev. & Ann. Stat. 1903, provides:

"In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly per-

formed all the conditions on his part; and if such allegations be controverted, the party pleading must establish, on the trial, the facts showing such performance."

In *Cleveland School Furniture Co. v. Hotchkiss,* 89 Tex. 117, 33 S. W. 855, an agent contracted to sell furniture on commission and bound himself to sell such persons only as were legally qualified to enter into contracts, which contracts were subject to defendant's acceptance. The agent sold furniture to certain school districts under contracts which were not binding on the districts. The defendant accepted the orders, believing them to be legal. It was held that the defendant was not estopped by its acceptance of the orders from pleading their illegality against a claim for commission.

In Clark and Sykes on Agency, section 361, at page 816, it is said:

"Where the parties expressly agree that the agent's right to compensation shall depend upon certain contingencies or conditions precedent, an agent cannot recover compensation for his services unless all such contingencies have or have not happened according to the agreement or all the conditions precedent prescribed by the contract have been performed or fulfilled."

In 31 Cyc., page 1509, it is also stated:

"The terms of the employment may be such that the right to compensation is dependent, not merely upon the agent's finding a person who enters into a specified contract with the principal, but also upon the carrying out of that contract by the parties thereto, according to its terms."

It seems that the burden was upon the plaintiff to prove on the trial at *nisi prius* a compliance with the agreement which he pleaded and relied upon. The board of county commissioners having entered into a contract with the plaintiff in error, through its agent, the defendant in error, such board is presumed to have had authority to enter into such undertaking. When the defendant in error proved the execution of the contract, on that issue he made a *prima facie* case and the burden shifted to the plaintiff in error to show that the contract was *ultra vires.* Of course, if the records, of which the court would take judicial

knowledge, would show the contract to be *ultra vires,* the rule would be different. But where the *ultra vires* act depends upon the amount of the tax levy for a specific purpose in a certain year, which could only be shown by proof, and the board having made the contract, it is presumed. to act lawfully. *Coffee County Com'rs Court v. Moore,* 53 Ala. 25; *Grayson, Adm.,. v. Latham et al.,* 84 Ala. 546; *Wall v. Monroe County,* 103 U. S. 74; 2 Dillon's Municipal Corporations (5th Ed.) section 855, at page 1294, and authorities cited in footnote 1.

Paragraph (g) of said contract provides:

"All orders for machinery shall be taken on blanks to be furnished by said National Drill & Manufacturing Company, and shall be forwarded to said National Drill & Manufacturing Company, at its offices in Chicago, Illinois, for acceptance. If an order for any of the above-named machinery is obtained from any city, town, township or county, such order shall be accompanied by a statement of the financial condition of such municipality, which statement shall be forwarded along with such order to Chicago, Illinois, as above provided. All such orders from any such municipality, shall provide for as short time for payment as it is possible to obtain, and the warrants, notes or other obligations, shall, in no case, run longer than three years from the date of sale."

The plaintiff in error insists that there is no evidence in the record tending to show that the defendant in error complied with this provision.

The defendant in error testified as follows:

"Q. I will ask you if, pursuant to that contract which 'is admitted to have been entered into, you made the contract which I now hand you, between Greer county and the National Drill & Manufacturing Company? A. Yes, sir. Q. I will ask you if the members of the board of county commissioners whose names are signed to this contract entered into a contract with you pursuant to this, on the 8th day of September, 1904? A. Yes, sir. Q. I will ask you if, pursuant to that contract, the National Drill & Manufacturing Company shipped to the board of county commissioners of Greer county, Oklahoma, the goods therein purchased according to this contract? A. Yes, sir."

On September 13, 1904, plaintiff in error wrote the defendant

in error in part as follows: "We are in receipt of your valued favor of the 9th inst. enclosing order for 3 elevating graders and 9 wagons. We certainly wish to congratulate you on your nice work. * * *" This letter referred to the graders for which the commission is claimed in this case. The record further recites: "Mr. Womack: I admit that the order was received and that the goods were shipped to the town of Altus." This town was then located in Greer county. The jury would have been justifiable in finding that the defendant in error complied with the provisions of paragraph (g).

The record further recites:

"Q. You may state to the court and jury if you furnished to the company, under your commission contract set out in your petition, a statement of the tax levy for road and bridge purposes for the year 1904. Mr. McCrory: To which we object as incompetent, irrelevant and immaterial. The Court: Sustained. Mr. Womack: Exception."

This exception, however, seems to have been abandoned in brief by plaintiff in error. Rule 25 of this court provides:

"Where a party complains on account of the admission or rejection of testimony, he shall set out in his brief the full substance of the testimony, to the admission or rejection of which he objects, stating specifically his objection thereto."

This court has repeatedly held that where such was not done, the question as to the rejection or admission of such evidence would not be considered on review.

4. Instructions 6, 7, 8, 9 and 10, requested by the plaintiff in error, were each properly refused. In so far as they correctly stated the law, the same were covered by the general instructions to the jury.

5. No reversible error was committed in overruling the demurrer to plaintiff's evidence.

The judgment of the lower court is affirmed.

All the Justices concur.