Mr. Michael A. Rider Attorney for the Board of County Commissioners of Glades County Post Office Box 608 Lake Placid, Florida 33852
Dear Mr. Rider:
This is in response to your request for an opinion on substantially the following question:
 MAY THE BOARD OF COUNTY COMMISSIONERS OF GLADES COUNTY USE THE SURPLUS OF THE CONSTITUTIONAL GAS TAX TO LEASE OR PURCHASE ROAD EQUIPMENT FOR THE MAINTENANCE OF COUNTY ROADS AND BRIDGES?
Your letter states that the county commission desires to use the surplus of the second gas tax (now the constitutional gas tax pursuant to s 11, Ch. 83-3, Laws of Florida) to lease road maintenance and construction equipment such as motor graders, dump trucks, draglines, backhoes, etc., for the direct purpose of road maintenance as permitted by the 1980 amendment of s 9(c)(5), Art. XII, State Const. Your inquiry refers to AGO 79-43 which was rendered before the 1980 constitutional amendment and which concluded, inter alia, that surplus second gas tax funds `may not be used for the purchase of road machinery, such funds being restricted to the acquisition and construction of roads.' Seealso, AGO 79-104, which, among other things, states that such funds may not be used for the purchase or rental by the county of road equipment or buildings. In addition you refer to AGO 82-55, concluding that the 1980 amendment of s 9(c)(5) of Art. XII, State Const., changes the permitted uses of surplus second gas tax funds such that these funds may now be used for the maintenance of roads within the county road system as defined in s 334.03(23), F.S. Thus, your inquiry regards what effect the 1980 amendment to s 9(c)(5) of Art. XII, State Const., has on the conclusions reached in AGO's 79-43 and 79-104, concerning the use of surplus second gas tax funds (now constitutional gas tax funds) for the purchase or lease of road equipment for the maintenance of county roads and bridges. In light of the radical changes made since 1977 in both the Constitution and the statutes with regard to the responsibility for the construction and maintenance of state and county roads and the permitted uses of the surplus of the constitutional gas tax and to the extent a county may lawfully employ its own forces, materials and equipment for the construction and maintenance of county roads and bridges now constituting the county road system as defined by law, I have reexamined the conclusions set forth in AGO's 79-43 and 79-104 and to the extent that they conclude to the contrary, they are hereby superseded and modified. This opinion will govern with regard to the use of the surplus of the constitutional gas tax for the purchase or leasing of road equipment and the purchase of materials for the construction and maintenance of roads and bridges in the county road system as defined by s 334.03(23), F.S.
Section 9(c)(5), Art. XII, State Constitution as amended, 1980, in pertinent part provides that `[t]he proceeds of the `second gas tax' . . . shall be used . . . for the acquisition and construction of roads and for road maintenance as authorized bylaw.' The underscored clause was added by the 1980 amendment.
As provided in the `Florida Transportation Code,' Chs. 334-339 and 341, F.S., as amended, the Department of Transportation was required to adopt a plan for the functional classification of roads and to implement an orderly transfer of responsibility for such roads between the state and local governments as required by such plan, to be completed by July 1, 1982. Section 335.04(1), F.S. The department and counties, and other governments, have the responsibility for the operation and maintenance of the roadsunder their respective jurisdictions and the department was to discontinue maintaining, through contractual agreements, those facilities off the state highway system by July 1, 1980. Section 335.04(4), F.S. Pursuant to s 339.08(4), F.S., as amended by s 38 of Ch. 83-3, Laws of Florida, the department was required, beginning July 1, 1977, to develop and implement a transfer of the administrative responsibility for construction programs financed by the 80 percent portion of the constitutional gas tax which was to be completed by July 1, 1980. Pursuant to subsection (5) of s339.08, as amended, the department is required to maintain on deposit with the State Board of Administration all proceeds of the 80 percent surplus of the constitutional gas tax. Subsection (6) of s 339.08, as amended by Ch. 82-120, Laws of Florida, provides that effective July 1, 1983, the State Board of Administration shall assume responsibility for distribution of the counties' 80 percent share of the constitutional gas tax in the same manner as the 20 percent share is currently distributed pursuant to s206.47, F.S. Section 339.089(2) F.S. (1981), provides that any surplus (of the constitutional gas tax) which is not used to provide certain connecting roads shall be used on the county road system, as defined in s 334.03(23), F.S. Section 206.60(2)(b)2., F.S., assigns to the county commission the full responsibility for the maintenance of transportation facilities in the county and of roads in the county road system (including those formerly a part of and transferred from the state secondary road system), and s336.02, F.S., empowers the county commission to establish new roads, change old roads and keep these in good repair. Section336.41, F.S., as amended by s 37 of Ch. 83-3, supra, empowers the county commission to employ labor and provide equipment as may be necessary for the construction and opening of new roads and bridges and for the repair and maintenance of any existing roads and bridges, except that all construction and reconstruction of roads and bridges, including *3172 resurfacing, full scale mineral seal coating, and major bridge and bridge system repairs, which are to be performed utilizing the proceeds of the 80 percent portion of the surplus of the constitutional gas tax shall be let to contract to the lowest responsible bidder by competitive bid, except in certain enumerated circumstances. This statute expressly excludes routine maintenance from its operation, and it does not apply to or otherwise control the use of other revenues, such as the 20 percent portion of the surplus of the constitutional gas tax. See, AGO 83-22. In addition s 125.01(1)(m), F.S., which provides that to the extent not inconsistent with general or special law, the counties may provide roads and bridges, when read with s 125.01(3)(a) and (b), F.S., which incorporates all implied powers necessary or incidental to carrying out enumerated powers and secures home rule powers for counties, indicates that in light of the statutory and constitutional changes set forth above the counties are not only empowered to construct, operate and maintain county roads and bridges (including those formerly a part of and transferred from the state secondary road system) in the county road system as defined in s 334.03(22), F.S., but are now obligated and charged with the responsibility therefor. see also, Speer v. Olson, 367 So.2d 207 (Fla. 1978); s 1(f), Art. VIII, State Const. It is therefore apparent that by virtue of the foregoing constitutional amendment and statutory changes that the counties now have the full authority and responsibility for the construction and maintenance of all roads and bridges in the county road system, including those that formerly were in and a part of the state secondary road system within a county, and that the state, by and through the Department of Transportation, no longer has the responsibility for such construction and maintenance.
The only limitation placed by s 9(c)(5), Art. XII, State Const., as amended in 1980, on the use of the surplus of the constitutional gas tax is that contained in the third priority directing that such proceeds be used for the general purpose of `the acquisition and construction of roads and for road maintenance as authorized by law.' Section 206.47(7), F.S., which has not been substantively amended since the adoption of the 1980 amendment of s 9(c)(5) of Art. XII, provides that the surplus gas tax funds be used `for the acquisition and construction of roads.' In view of the existing constitutional and statutory provisions concerning the responsibility for the construction and maintenance of roads and bridges in the county road system and the distribution and permitted uses of the surplus of the constitutional gas tax, I am reluctant, indeed, I possess no authority, to read or write any other implied limitations therein. Therefore, pending any clarifying legislation or legislative direction to the contrary, I am for the reasons set forth herein of the opinion that the county commission may use the surplus or the constitutional gas tax to lease or purchase road equipment necessary for or directly connected with and necessarily incidental to carrying out its duties and responsibilities for the construction and maintenance of roads and bridges in the county road system. However, s 336.44(1), F.S., states that `[t]he commissioners shall let the work on roads out on contract, in accordance with s. 336.41(3)' (e.s.) and s 336.41(3), F.S., as amended, provides, with certain enumerated exceptions, that all construction and reconstruction of roads, including the specified maintenance programs, which are to be performed using the 80 percent portion of the surplus constitutional gas tax shall be let to contract.
Therefore, there would not appear to be any necessity for the county commission to purchase or lease any road equipment in connection with or incidental to any construction or maintenance projects which are required to be let to contract.
Although there does not appear to be any Florida case law dealing with the use of the surplus of the second gas tax (now the constitutional gas tax) to lease or purchase road equipment in connection with the construction and maintenance of roads and bridges by the counties themselves, the general rule in the other jurisdictions appears to be that a highway fund may be used for the general purpose for which it exists, including everything appropriately connected with, and necessarily incidental to, the complete accomplishment of that purpose. See generally, 40 C.J.S. Highways s 176(h)2(a); 39 Am.Jur.2d Highways, Streets,and Bridges s 97. Within this rule an expenditure for road machinery and for the ordinary and usual devices used to promote the safety and convenience of traffic have been held proper. Seegenerally, 40 C.J.S. Highways, supra. In Anderson v. American State Bank, 11 S.W.2d 444, 446 (Ark. 1928), the statute under consideration by the court provided that a special highway fund was to be used for the purpose of constructing and maintaining roads. It was contended that the use of such fund for any purpose except building and maintaining county highways was forbidden by the act itself and that the purchase of machinery would be in violation of the act. The Arkansas court held that such fund was available for the purchase of machinery necessary in the construction and maintenance of roads and stated that:
 [T]he evident purpose of the act appropriating funds to roads and highways in the county was that the roads and highways might be constructed and maintained, and this could not be done without the purchase of certain machinery. If this fund could not be used in buying machinery, it could not be used in buying material nor employing labor. It therefore appears to us that it was the intention of the Legislature to authorize the expenditure of this fund in the construction and maintenance of roads in the county, and that to do this they might purchase whatever material or machinery was necessary to accomplish the purpose.
Cf., National Drill Manufacturing Co. v. Davis, 120 P. 976 (Ok. 1911); State ex rel. Dryden v. Renschler, 19 P.2d 931 (Wash. 1933); Teer v. Jordan, 59 S.E.2d 359 (N.C. 1950). Accord, Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936); In Re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); Peters v. Hansen, 157 So.2d 103 (Fla. 1963); State ex rel. Martin v. Mitchell, 188 So.2d 684 (4 D.C.A. Fla., 1966) cert. disch'd.,192 So.2d 281 (Fla. 1966), holding that it is well settled in this state that if a statute imposes a duty upon a public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for complete exercise or performance of the duty that is not in violation of law or public policy; and, Girard Trust Co. v. Tampashores Development Co., 117 So. 786 (Fla. 1928); Deltona Corporation v. Florida Public Service Commission, 220 So.2d 905
(Fla. 1969), which state that if a statute grants a right or imposes a duty, it also confers by implication every particular power necessary for the exercise of the one or the performance of the other.
Therefore, until and unless legislatively clarified or directed otherwise, it is my opinion that the Board of County Commissioners of Glades County may use the surplus of the constitutional gas tax to lease or purchase road equipment necessary for or directly connected with and necessarily incidental to carrying out its responsibilities for the construction and maintenance of roads, except for any construction or maintenance projects which are required to be let to contract as provided in s 336.41(3) and s336.44(1), F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Gerry Hammond, Assistant Attorney General